Thomas AHLBURN et al.

v.

R. Gary CLARK, Tax Administrator,
State of Rhode Island, Division
of Taxation.

No. 97–558–M.P.

Supreme Court of Rhode Island.

April 7, 1999.

Kevin M. Brill, Providence, for Plaintiff.

Rebecca Tedford Partington, Providence,
for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The constitutionality of a state statute exempting bibles and other canonized religious scriptures from the state sales tax forms the nub of this petition for certiorari. The defendant, R. Gary Clark, Tax Administrator (tax administrator) of the State of Rhode Island, Division of Taxation (collectively, the state), asks us to reverse a District Court judgment finding G.L.1956 § 44–18–30(30) unconstitutional under the Establishment Clause of the First Amendment to the United States Constitution. After reviewing the statute and the applicable legal authorities, we affirm, but on different grounds than those relied upon by the District Court. For the reasons set forth below, we conclude that the statute violates the Free Press Clause of the First Amendment to the Federal Constitution ("Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."), a prohibition that the Fourteenth Amendment makes applicable to the states. *See Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

### Introduction

Section 44–18–30(30), entitled *Bibles,* provides that no state sales tax shall be due "[f]rom the sale and from the storage, use, or other consumption in the state of any canonized scriptures of any tax exempt nonprofit religious organization including but not limited to the Old Testament and the New Testament versions." However, in 1989, the United States Supreme Court rendered its decision in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). There, the Court held that a Texas sales-tax exemption for bibles and other religious literature was unconstitutional. In response to *Texas Monthly,* the tax administrator promulgated regulation SU 92–136.[1] This regulation purports to subject bibles and other canonized scriptures to the Rhode Island sales tax, notwithstanding the contrary mandate of § 44–18–30(30). Thus, regulation SU 92–136 leaves Rhode Island booksellers and book buyers at sea over whether the sales of bibles and other canonized scriptures are subject to the sales tax.

The plaintiffs comprise both commercial retailers and consumers of various types of publications, including religious literature that is subject to the statutory exemption. As a result of the regulation, however, plaintiffs have been left to determine at their own peril whether a state sales tax is due on their respective sales and purchases of bibles and other canonized scriptures. They petitioned the tax administrator for a definitive ruling as to whether the regulation or the statute would apply to their transactions in such literature. In response, the tax administrator communicated his inability to resolve the alleged constitutional infirmity of the statute as applied to each plaintiff. He simply emphasized the applicability of the regulation, leaving any constitutional determination of the statutory exemption's validity to a later judicial resolution.

Unsatisfied with the tax administrator's answer and still uncertain about whether to collect and/or to pay sales taxes on the purchase of bibles and other canonized scriptures, plaintiffs then filed a complaint in the District Court seeking injunctive relief and a declaration of their rights with respect to the constitutionality of § 44–18–30(30). After reviewing *Texas Monthly,* the District Court took note of several cases that were decided in its wake before concluding that the § 44–18–30(30) exemption violated the Establishment Clause of the First Amendment to the Federal Constitution. The District Court,

---

1. Regulation SU 92–136 provides as follows:

    "BIBLES AND OTHER CANONIZED SCRIP-
    TURES
      "The sale, storage and use or other consumption in this state of bibles or any other canonized scriptures is subject to tax notwithstanding the provisions of R.I.G.L. 44–18–

    30(HH). Such bibles and other canonized scriptures are subject to tax in accordance with the United State [*sic*] Supreme Court's decision in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, [109 S.Ct. 890, 103 L.Ed.2d 1] (1989).
        R. GARY CLARK
        TAX ADMINISTRATOR
    "EFFECTIVE DATE: January 1, 1993."

however, denied plaintiffs' request for injunctive relief because it believed that the continuing viability of regulation SU 92–136 in the aftermath of § 44–18–30(30)'s demise effectively granted the injunctive relief requested by plaintiffs. In other words, after the District Court struck down the statute, the validated existence of the regulation—untrammeled by a contrary statutory exemption—indicated that the tax administrator would not attempt to enforce the exemptions set forth in § 44–18–30(30). Thus, the sale of such publications would continue to be taxable pursuant to the regulation.

We have reviewed the statute at issue and the relevant case law with respect to this type of an exemption from state sales taxation, and we are of the opinion that § 44–18–30(30) is indeed unconstitutional. We reach this result, however, not on Establishment Clause grounds, but because we conclude that the tax exemption is inconsistent with the pronouncements of the United States Supreme Court concerning the free-press guaranty embodied in the First Amendment to the Federal Constitution.

## I

### Standing

■■■ We first address whether plaintiffs have standing to assert these claims. We conclude that they do. In *Pontbriand v. Sundlun*, 699 A.2d 856 (R.I.1997), we recently addressed our standing requirements in light of the guidelines set forth in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). There, we held that standing is a matter of determining "whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged [act]. If he [or she] has, he [or she] satisfies the requirement of standing." *Pontbriand*, 699 A.2d at 862 (quoting *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)). We also described our standing requirement as boiling down to an issue of "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." *Pontbriand*, 699 A.2d at 862 (quoting *Camp*, 397 U.S. at

152, 90 S.Ct. at 829, 25 L.Ed.2d at 187). Further, we noted that this "injury in fact" requirement has been described as "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" 699 A.2d at 862 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992)). In deciding whether a particular plaintiff possesses the requisite standing, a court should draw the line not between whether the plaintiff has suffered a substantial injury or an insubstantial injury, but between injury and no injury. See *id.*; see also *Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, 452 A.2d 931, 933 (R.I.1982); *Matunuck Beach Hotel, Inc. v. Sheldon*, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979).

Here, plaintiffs have asserted the requisite injury-in-fact to satisfy this test. They are sellers and buyers of both canonized scriptures and secular publications who claim to be aggrieved by the existence of § 44–18–30(30). This statute exempts bibles and other canonized scriptures from the state sales tax. Because of the manifest conflict between the regulation and the statute, the sellers of such publications contend that they cannot determine whether to collect and remit sales taxes on such sales. Under Rhode Island law: "All taxes collected by any retailer from purchasers * * * shall constitute a trust fund for the state until paid to the tax administrator. That trust shall be enforced against: (1) The retailer * * *." G.L.1956 § 44–19–35. Additionally, § 44–19–12 provides for pecuniary penalties if retailers like these book-selling plaintiffs fail to remit all of the sales taxes due to the appropriate taxing authorities:

"If any part of the deficiency for which a deficiency determination is made is due to negligence or intentional disregard of the provisions of this chapter and chapter 18 of this title, a penalty of ten percent (10%) of the amount of the determination shall be added thereto. If any part of the deficiency for which a deficiency determination is made is due to fraud or an intent to evade the provisions of this chapter or chapter 18

of this title, a penalty of fifty percent (50%) of the amount of the determination shall be added thereto."

Therefore, in addition to their liability for any uncollected sales taxes, retailers of bibles and other canonized scriptures face possible pecuniary penalties for failing to collect such taxes under § 44–19–12.

Those who purchase taxable literature from retailers also may incur liability for unpaid sales taxes. Pursuant to § 44–18–19, a seller of publications subject to the sales tax:

> "shall add the tax hereby imposed to the sale price or charge, and when added *the tax shall constitute a part of the price, or charge, [and] shall be a debt from the consumer or user to the retailer, and shall be recoverable at law in the same manner as other debts.*" (Emphasis added.)

Thus, Rhode Island law specifically designates the retail seller as the authorized collector of the tax from the consumer. *See* § 44–18–22; see also *In re Melino Cigar & Candy Co.*, 22 B.R. 703, 705 n. 4 (Bankr. D.R.I.1982). Moreover, assuming a retailer maintains personal identification records for purchasers—for example, credit-card receipts—or is able to identify buyers using other means, a purchaser may be liable to indemnify the seller for any unpaid sales taxes that the seller failed to collect when the sale occurred. Given these statutory provisions, plaintiffs face economic injury if bibles and other canonized scriptures are indeed subject to the sales tax, as the regulation indicates, notwithstanding a statutory exemption indicating that no sales taxes are to be collected with respect to sales involving this type of literature. Based upon the above considerations, and mindful that "[s]tanding is [simply] an access barrier that calls for the assessment of one's credentials to bring suit," *Blackstone Valley Chamber of Commerce*, 452 A.2d at 932, we are satisfied that plaintiffs possess the requisite personal stake in the outcome of this controversy to satisfy the standing requirement. *Accord Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (holding that taxpayers have standing to challenge the validity or application of a taxing statute in determining their tax obligations).

## II

### Constitutionality of the Sales–Tax Exemption for Bibles and Other Canonized Scriptures

We next address the constitutionality of the sales-tax exemption for bibles and other canonized scriptures. Although this Court will consider only those issues that the parties have properly raised and presented at trial, *see Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I.1996), we can affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling,[2] *see C & J Leasing Corp. v. Paolino*, 721 A.2d 839, 841 (R.I.1998); *State v. Nordstrom*, 529 A.2d 107, 111–12 (R.I.1987); *see also Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224, 230 (1937). For the reasons explained below, we affirm the District Court's ruling that § 44–18–30(30) is unconstitutional, but we do so on the grounds that it violates the First Amendments Free Press Clause. Thus, we do not reach the issue of whether, as the District Court concluded, § 44–18–30(30) violates the Establishment Clause of the First Amendment.

Our reasons for coming to this conclusion largely coincide with those set forth by the majority of the United States Supreme Court in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). Indeed, we believe that *Ragland* controls the result in this case. There, the Supreme Court struck down an Arkansas sales-tax scheme that provided an exemption for newspapers, as well as religious, professional, trade, and sports journals, because at the same time that the state exempted these publications from the tax, it also was taxing the sale of general-interest

---

**2.** As previously indicated, the District Court held that *G.L.1956* § 44–18–30(30) was unconstitutional under the Establishment Clause of the First Amendment to the United States Constitution. The record reflects, however, that plaintiffs also raised similar arguments with regard to the statutes alleged unconstitutionality under the First Amendment's free-press guaranty. Our opinion rests upon this latter ground.

magazines (even though these latter publications might include, in part, the same type of published materials that one could find in the tax-exempt publications). In holding such a state-sales-tax scheme unconstitutional, the Court noted that a statute operating in such a way that a given publication's tax status depends entirely upon its content is particularly repugnant to the First Amendment. *See id.* at 230, 107 S.Ct. at 1728, 95 L.Ed.2d at 220 ("Regulations which permit the Government to discriminate on the basis of content of the message cannot be tolerated under the First Amendment.") (citing *Regan v. Time, Inc.*, 468 U.S. 641, 648–49, 104 S.Ct. 3262, 3266–67, 82 L.Ed.2d 487, 494 (1984)).

In this case, religious publications that constitute bibles and other canonized scriptures of established religions are exempt from the state sales tax under § 44–18–30(30) because of their religious content. Although different subsections of this same statute similarly favor newspapers, textbooks, and promotional boat literature, §§ 44–18–2, –37, –39, other publications, including books, periodicals, magazines, and other types of non-canonized religious literature, are subject to the sales tax. Manifestly, this statute unlawfully defines and rewards its beneficial recipients based upon the content and type of the publications in question. Thus, this is the same type of discriminatory, content-based tax statute that the Supreme Court in *Ragland* struck down as inconsistent with the free-press guaranty of the First Amendment.

Moreover, it appears to us that these bookselling and book-buying plaintiffs and other potential taxpayers subject to this law will need to call upon the state governments sales-tax authorities with some regularity to determine whether particular religious literature—especially newly published material—falls within or without Rhode Island's limited statutory exemption for bibles and other scriptures canonized by one or more of the established religions. To make such a determination, the state's sales-tax administrators either will have to consult with the appropriate religious authorities and then decide in each case whether particular publications qualify for the tax exemption, or else they will have to review the various publications at issue themselves and then make their own determination concerning whether this literature qualifies as "canonized scriptures." In either case, like Santa Claus, the state's sales-tax officials will be making their list and checking it twice with the favored recipients of this statute's content-based largesse. Such an effort strikes us as a paradigmatic example of the type of excessive, content-based entanglement between government and the subject matter of publications that the Free Press Clause was designed to prohibit. Indeed, "[s]uch official scrutiny of the content of publications as the basis for imposing a tax is entirely incompatible with the First Amendment's guarantee of freedom of the press." *Ragland*, 481 U.S. at 230, 107 S.Ct. at 1728, 95 L.Ed.2d at 220 (citing *Regan*, 468 U.S. at 648, 104 S.Ct. at 3266, 82 L.Ed.2d at 494); *see also Texas Monthly*, 489 U.S. at 25–26, 109 S.Ct. at 905, 103 L.Ed.2d at 20 (White, J., concurring).

■ To justify a scheme of differential taxation based upon the type and content of various publications, the state would have to show that the challenged exemptions were necessary to serve a compelling state interest, and that the Legislature has carefully crafted them to achieve such an end. *See Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 581–85, 103 S.Ct. 1365, 1369–72, 75 L.Ed.2d 295, 302–05 (1983). On appeal, the Attorney General (representing the tax administrator) advances but one state interest to support the exemptions in § 44–18–30(30)—namely, that the exemptions set forth in § 44–18–30(2)–(49), taken as a whole, show that they are "intended to advance the well-being of the individuals of the State on many levels." [3] Assuming that this proffered government interest in advancing the well-being of Rhode

---

**3.** This advancement of the well-being of Rhode Island's citizenry, argues the Attorney General, includes recognition of a long heritage of religious tolerance and freedom in Rhode Island, as well as recognition of nonprofit organizations that offer support for such principles in the state's absence. The Attorney General, however, apparently did not present these contentions to the District Court.

Island's citizenry via the promotion of religious activity and supportive nonprofit organizations is indeed compelling, the Legislature's placement of a sales-tax exemption for canonized religious literature in a section of the General Laws that also exempts newspapers, textbooks, and promotional boat literature—amidst a potpourri of additional, unrelated items—is not carefully drawn to achieve that end. Indeed, the mere insertion of this specific boon for canonized religious scriptures in a subsection of a lengthy statute exempting sundry unrelated goods, commodities, and limited categories of specialized literature (newspapers, textbooks, and promotional boat literature) does not serve, in our opinion, to transmute the obvious purpose of this exemption to benefit established religions in Rhode Island into some more latitudinous goal that passes constitutional muster.

If the posited secular purpose of this unrelated hodgepodge of tax exemptions—namely, to advance the well-being of Rhode Island's citizens—were enough to sanction this type of overt discrimination in favor of established religious doctrine, promotional boat literature, and other favored types of publications, then the exemptions would have to include, at a minimum, a much broader spectrum of published material, including books, magazines, non-canonized religious publications, and writings that question or criticize the teachings of the established religious faiths that do not happen to be included in a newspaper or a textbook. But the statute fails to do so. Thus, these exemptions are markedly under-inclusive to accomplish such a broad-based objective.

Moreover, just because the General Assembly has seen fit to stir some newspapers and textbooks into its tax-exempt brew of canonized scriptures and promotional boat literature does not serve to distill this law's discriminatory, content-based essence. On the contrary, by confining these particular tax exemptions exclusively to the sale of canonized scriptures and other favored types of publications—but not others—the General Assembly obviously has engaged in a preferential effort to foster the communication of certain privileged publications in a manner that is anything but content neutral. However, this is precisely what it cannot do consistent with the constitutional bar against abridging the freedom of the press.

### Conclusion

 A tax or an exemption like this one "that targets individual publications within the press, places a heavy burden on the State to justify its action." *Ragland,* 481 U.S. at 234, 107 S.Ct. at 1730, 95 L.Ed.2d at 223 (quoting *Minneapolis Star & Tribune Co.,* 460 U.S. at 592–93, 103 S.Ct. at 1376, 75 L.Ed.2d at 309). In our judgment, the state has failed to advance a compelling interest that could meet such a burden. Accordingly, we deny the petition for certiorari, quash the writ previously issued, and affirm the judgment of the District Court on the grounds that § 44–18–30(30) unconstitutionally infringes upon the First Amendment's bar (applicable to the states via the Fourteenth Amendment) of any law that abridges the freedom of the press. We therefore remand the papers in this case with our decision endorsed thereon to the District Court for entry of an amended judgment consistent with this opinion.