This matter is before the Court on the defendants' Motion for Order declaring R.I. Gen. Laws § 5-37.3-4(b)(8)(ii) unconstitutional. The defendants,[1] all litigants in pending medical malpractice actions, are challenging the constitutionality of the statute's prohibition on disclosure by a health care provider, through ex parte contacts, of a patient's confidential health care information. The defendants seek to have R.I. Gen. Laws § 5-37.3-4(b)(8)(ii) declared unconstitutional or, in the alternative, deemed waived in the pending actions. For purposes of this motion, the cases have been consolidated.
 Facts/Travel
In 1978, the Rhode Island Legislature enacted the Confidentiality of Health Care Information Act (hereinafter known as, "CHCIA"). The purpose of CHCIA is "to establish safeguards for maintaining the integrity of confidential health care information." R.I. Gen. Laws § 5-37.3-2
(1956). Section 5-37.3-4(b)(a) of the CHCIA provides that "[a] patient's confidential health care information shall not be released or transferred without the written consent of the patient." Subsection (b) of this provision sets forth enumerated exceptions for which no consent is required for the release or transfer of confidential health care information.
In 1992, the Supreme Court, in Lewis v. Roderick examined the language of the CHCIA and concluded that "the legislature did not intend to create an absolute privilege that would protect the patient's interests in privacy, yet, hamper discovery in medical malpractice actions." Lewis v. Roderick 617 A.2d 119, 121-122 (R.I. 1992). Consequently, the court held that the privilege created by CHCIA could be waived when a patient makes the choice of placing his or her medical condition at issue. See id. The court went on further to interpret the statute as authorizing a defendant or his attorney to engage in ex parte communications with a plaintiff's non-defendant treating physician once the privilege had been waived. See id. The court reasoned that "absent language to the contrary, we must assume that the Legislature intended everything to be disclosed upon waiver of the so-called patient-physician privilege." See id.
Subsequently, in 1998, the legislature in response to the Supreme Court's holding in Lewis amended the CHCIA and added §5-37.3-4(b)(8)(ii). Section 5-37.3-4(b)(8)(ii) provides that,
 "(ii) Disclosure by a health care provider of a patient's health care information which is relevant to a civil action brought by the patient against any person or persons other than that health care provider may occur only under the discovery methods provided by the applicable rules of civil procedure (federal or state). This disclosure shall not be through ex parte contacts and not through informal ex parte contacts with the provider by persons other than the patient or his or her legal representative."
As amended, the statute specifically prohibits ex parte contacts and informal ex parte contacts between a patient's treating physician and persons other than the patient or his or her legal representative.
In October 2000, the defendants filed a motion for order seeking to declare unconstitutional § 5-37.3-4(b)(8)(ii). The defendants contend that subsection (b)(8)(ii) violates the freedom of speech, equal protection and due process provisions of the United States and Rhode Island Constitutions. The defendants further contend that the subsection constitutes a violation of the separation of powers and right to justice provisions of the Rhode Island Constitution. Finally, the defendants argue that subsection (b)(8)(ii) is impermissibly vague.
In December 2000, the plaintiffs[2] to this action filed a joint motion requesting limited consolidation of all of the defendants' motions. The plaintiffs sought to consolidate the numerous motions filed by the defendants in order to allow a single justice to hear and determine the merits of the motions. The matter was heard before this Court on January 3, 2001. After hearing, this Court granted the plaintiffs' motion for limited consolidation.
This Court must now determine the following issues: (1) whether §5-37.3-4(b)(8)(ii) violated the free speech, due process and equal protection provisions of the United States and Rhode Island Constitutions, (2) whether § 5-37.3-4(b)(8)(ii) violates the separation of powers and right to justice provisions of the Rhode Island Constitution and (3) whether § 5-37.3-4(b)(8)(ii) is void for vagueness.
 Discussion
"It is well established that a legislative enactment is presumed to be constitutional in form and application until proven otherwise beyond a reasonable doubt. Lynch v. King. 391 A.2d 117, 121 (R.I. 1978) (citing State v. Capone, 347 A.2d 615, 619 (R.I. 1975)). The court shall have "every reasonable intendment in favor of * * * constitutionality" in order to preserve the constitutionality of the statute. See id. The court will look to the intentions of the legislature in enacting the statute and will not construe a statute to reach an absurd result. Brermen v. Kirby 529 A.2d 633, 637 (R.I. 1987); see also Kaya v. Partington,681 A.2d 256, 261 (R.I. 1996). The court has traditionally upheld laws enacted "to suppress crime, to preserve peace and good order and to protect the rights of person and property." See Lynch 391 A.2d at 122. The burden of establishing the unconstitutionality of a statute is carried by the party challenging said statute. See id.
 Standing
The Court must as a threshold matter address whether the defendants have standing to challenge the constitutionality of §5-37.3-4(b)(8)(ii). The plaintiffs contend that the defendants do not have standing to challenge the statute's constitutionality. The plaintiffs argue that the defendants have failed to show an injury in fact. The defendants disagree and assert that by virtue of the fact that they are health care providers they have sustained an injury in fact.
Standing determines "the power of the court to entertain a lawsuit." Dupres v. City of Newport 978 F. Supp. 429, 432 (D.R.I. 1997). Our Supreme Court has held that standing is "only a matter of determining whether the person whose standing is challenged has alleged an injury in fact." Ahiburn v. Clark 728 A.2d 449, 451 (R.I. 1999). In order to prove an injury in fact, one must show an "invasion of a legally protected interest which is (a) concrete and particularize and (b) actual or imminent not conjectural and hypothetical." See id. at 451.
In Ahiburn v. Clark our Supreme Court addressed the issue of standing as it applied to buyers and sellers of secular publications. 728 A.2d at 451. Ahlburn involved a statute that imposed a mandatory sale tax on bibles and other secular publications. See id. The court held that both sellers and buyers possessed "the requisite personal stake in the outcome of the controversy to satisfy the standing requirements." See id. at 452. The court found that the buyers faced economic injury if the sales tax was imposed and that the sellers could be held liable for failing to collect the sales tax. See id.
In the instant case, the defendants are health care providers that are affected by the legislature's enactment of § 5-37.3-4(b)(8)(ii). Section 5-37.3-4(b)(8)(ii) prohibits ex parte contacts between defendant health care providers and the patient's non-defendant treating physician. This prohibition would prevent a defendant health care provider from conducting informal discussions with a patient's treating physician in preparation for his or her defense. The defendants have a personal stake in the outcome of this case.
Accordingly, this Court finds that the defendants have the requisite injury in fact to satisfy the standing requirement.
 First Amendment
The First Amendment to the United States Constitution guarantees that "Congress shall make no law. . .abridging the freedom of speech...." U.S. Const., Amend I. Under Article I, § 21, the Rhode Island Constitution also prohibits laws that abridge the freedom of speech. In determining whether a governmental regulation abridges freedom of speech, the court must engage in a three-part inquiry. Irish Subcommittee of the Rhode Island Heritage Commission v. Rhode Island Heritage Commission, 646 F. Supp. 347, 352 (D.R.I. 1986). First, the court must determine whether the speech is protected under the First Amendment. Second, the court must decide whether the restriction is content-based or content-neutral. Finally, the court must determine whether to apply strict scrutiny or whether a lesser standard is applicable. See id.
 A. Protected Speech
First, this Court must decide whether disclosure of confidential health care information is protected speech under the First Amendment. The defendants contend that health care providers have a First Amendment right to disclose confidential health care information. The plaintiffs assert that confidential health care information is privileged information under the CHCIA and cannot be trumped by free speech.
The First Amendment protects verbal expression unless it falls into an unprotected category of speech that includes obscenity, libel or fighting words. Irish Subcommittee of the Rhode Island Heritage Commission, 646 F. Supp. at 352. Generally, speech is protected if it involves disputes or expression of a public nature. See id. Disclosure of confidential privileged information is not protected under the First Amendment. American Motors Corp. v. Huffstutler 575 N.E.2d 116, 119-20 (Ohio 1991).
In Huffstutler a lawyer disclosed the confidential communications of the company. See id. Due to the violation of attorney client privilege, American Motors obtained an injunction preventing Huffstutler from any further disclosures of privileged material. See id. Huffstutler appealed claiming that the injunction violated his free speech rights under the First Amendment. See id. The court held that an attorney has no right under -the First Amendment to disclose information protected by the attorney-client privilege. See id. see also Paul R. Rice, Attorney Client Privilege in the United States § 10:2 at 899 (1993) ("although attorneys possess the same free speech rights as all other citizens, that right does not override the attorneys obligation to protect confidential communications of their clients"). The court reasoned that by practicing law an attorney surrenders a portion of his or her right to free speech under the First Amendment. See id.
This Court finds these authorities to be instructive as applied to health care providers and the patient-physician privilege. Disclosure of privileged health care information is not protected speech within the framework of the First Amendment. Although health care providers possess the same free speech rights as other citizens, this Court finds that by choosing to engage in the practice of medicine they have surrendered a portion of their free speech rights. This Court will not defeat the purpose and impact of privilege law by making the disclosure of privileged health care information a protected right.
In holding that the disclosure of privileged health care communication is unprotected speech under the First Amendment, this Court's inquiry should end here. However, assuming arguendo, that the disclosure of privileged health care information is indeed a protected right this Court will continue its free speech inquiry.
 B. Content-Based v. Content-Neutral
The second prong of the free speech inquiry addresses whether a particular restriction is content-based or content-neutral. Whether a regulation is content-based is determined by whether the government has adopted said regulation because it agrees or disagrees with the message it conveys. Turner Broadcasting System v. FCC 512 U.S. 622, 642 (1994). Regulations that distinguish favored speech from unfavored speech on the basis of views expressed are content based. See id. Content-based regulations restricts speech because of the general subject matter of the ideas or information. Providence Journal Company v. Newton723 F. Supp. 846, 853 (D.R.I. 1989). To the contrary, regulations that impose burden on speech without reference to the ideas or views expressed are in most cases content-neutral. Turner, 512 U.S. at 642. Content-neutral regulation involves an incidental interference with speech merely as a byproduct of the government's efforts to regulate some evil unconnected with the content of the speech. Newton, 723 F. Supp. at 853; see also Tuner, 512 U.S. at 642 (even if there is an incidental effect on certain speakers or messages and not others).
The defendants argue that subsection (b)(8)(ii) is a content-based speech restriction. The defendants claim that the statute prohibits ex parte communications, in particular, confidential health care information. Thus, restricting communications based on the content of the information provided by a patient's physician. The plaintiffs disagree and argue that subsection (b)(8)(ii) is a content-neutral restriction.
Section 5-37.3-4(b)(8)(ii) is a content-neutral restriction. Subsection (b)(8)(ii) applies to all aspects of a patient's health care information. There is no indication that the legislature enacted this provision because they disagreed with the message that might be communicated. Subsection (b)(8)(ii) imposes a burden incidental of the content of the information but merely as a byproduct of the governments efforts to protect a patient's privacy in his or her confidential health care information.
 C. Constitutional Analysis
A content-neutral restriction on free speech may be upheld pursuant to a lawful time, place and manner restriction. El Marocco Club. Inc. v. Richardson 746 A.2d 1228, 1235 (R.I. 2000). A time, place and manner regulation is acceptable so long as the restriction is (1) content neutral, (2) closely tailored to serve a significant governmental interest and (3) allows for the least restrictive means. See id. Narrow tailoring is defined as "a regulation that promotes a substantial governmental interest that would be achieved less effectively absent the regulation." Ward v. Rock Against Racism 491 U.S. 781, 799 (1989). A regulation will not be held invalid simply because a court concludes that a governmental interest could be adequately served by a least restrictive alternative. See id. at 800.
This Court finds that subsection (b)(8)(ii) is a valid content-neutral time, place and manner restriction. The defendants contend that this restriction cannot be considered a time place and manner restriction because it relates to a matter of private concern. However, the time, place and maimer test "were initially created to evaluate restrictions on expression taking place in a public forum [this test] has also been applied to conduct occurring in a public forum." El Marocco Club 746 A.2d at 1236.
This Court has already held that subsection (b)(8)(ii) is a content neutral regulation. This Court also finds that subsection (b)(8)(ii) is narrowly tailored to serve a significant governmental interest. The purpose behind the CHCIA and subsection (b)(8)(ii) is to "safeguard and maintain the integrity of confidential health care information." R.I. Gen. Laws § 5-37.3-2 (1956). The government's interest in protecting a patient's privacy, maintaining the integrity of confidential health care information and safeguarding the patient-physician privilege is significant. The government has attempted to achieve this goal by prohibiting ex parte communications between a defendant health care provider and a patient's treating physician. By prohibiting such contacts, the state ensures that a patient's confidential health care information is not inadvertently released. Moreover, by restricting ex parte communications the state can prevent unsupervised ex parte interviews, where a plaintiffs attorney could not object to an improper or inadvertent disclosure of privileged information. As such, the government's prohibition on ex parte contacts serves to further the state's goal of protecting the privacy of a patient's confidential health care information.
Finally, subsection (b)(8)(ii) does not unreasonably limit alternative avenues of communication. The prohibition enacted by the legislature restricts ex parte communication but still leaves open alternate means for health care providers to obtain a patient's confidential health care information. Subsection (b)(8)(ii) allows disclosure of information under the discovery methods provided by the applicable rules of civil procedure. Pursuant to Super. Ct. R. Civ. Pro. 26,
 "Parties may obtain discovery by one or more of the following methods: depositions upon oral examination, or written questions; written interrogatories, production of documents or things or permission to enter upon land or other property."
This provision still allows for an array of discovery mechanism to obtain disclosure of a patient's confidential health care information.
For the foregoing reason, this Court finds that § 5-37.3-4(b)(8)(ii) does not violate free speech.
 Equal Protection and Due Process
In addition to their free speech challenge, the defendants contend that § 5-37.3-4(b)(8)(ii) violates the equal protection and substantive due process provisions of the United States and Rhode Island Constitutions. The defendants claim that the statute unconstitutionally discriminates between two different types of patient/litigants, and between opponents in civil actions and others entitled to informally obtain a patient's confidential health care information. The plaintiffs respond that the statute furthers a rational purpose by safeguarding and maintaining the integrity of confidential health care information.
 The Fourteen Amendment to the United States Constitution provides that,
 "No state shall make or enforce any law which shall abridge. . .nor shall any state deprive any person of life, liberty and property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
A statute violates the equal protection clause "only if it rest on grounds wholly irrelevant to the achievement of the State's objective. . . ." Kennedy v. State 654 A.2d 708, 712 (R.I. 1995) (quoting McGowan v. Maryland 366 U.S. 420, 425-26 (1962)). When a statute involves neither a suspect classification, a fundamental right, nor a gender-based classification the proper standard for review is rational basis scrutiny. Dowd v. Raynor, 655 A.2d 679, 681 (R.I. 1995). Rational basis scrutiny is used in connection with social and economic legislation, thus, "presuming the legislation to be valid if the classification is rationally related to a legitimate state interest." In re Advisory from the Governor 633 A.2d 664, 669 (R.I. 1993). The classification must have a reasonable relationship to the public purpose sought to be achieved by the legislation. See id. A statutory discrimination "may not be set aside if any state of facts reasonably may be conceived to justify it." Kennedy. 654 A.2d at 712.
If section 5-37.3-4(b)(8)(ii) survives rational basis scrutiny under the defendants' equal protection argument, then it also survives any due process analysis. Where an economic or social regulation is challenged as a violation of substantive due process, unless the law abridged is a fundamental right, the court is to require only that the law bear a rational relationship to the state's legitimate purpose. In re Advisory Opinion From the Governor, 633 A.2d 664, 672 (R.I. 1993); see also Medical Malpractice Joint Underwriting Association v. Paradis 756 F. Supp. 669, 675 (D.R.I. 1995) (economic regulations that do not implicate fundamental rights satisfy substantive due process if the regulation bears a rational relationship to a legitimate state interest). Therefore, this Court only need to engage in an equal protection analysis.
Section 5-37.3-4(b)(8)(ii) is neither a suspect classification nor burdens a fundamental right. The defendant disagrees and argues that by its very terms subsection (b)(8)(ii) prohibits health care providers from discussing or disclosing health care information. As such, the statute impinges on a health care providers freedom of speech. For equal protection purposes, fundamental rights are those that are "explicitly or implicitly guaranteed" by the Constitution. Berberian v. Petit374 A.2d 791, 794 (R.I. 1977). The importance of a right to an individual does not determine whether it is a fundamental right for purposes of an equal protection analysis. See id. Health care providers have no fundamental right to disclose the privileged or confidential health care information of their patients. Huffstutler, 575 N.E.2d at 119-120 (the court held that an attorney had no right under the First Amendment to disclose privileged information). There is no evidence of such a right in either the federal or state constitutions. Therefore, no fundamental right is being abridged.
Thus, the inquiry becomes that of rational basis scrutiny. The defendants claim that the statute does not further a legitimate state purpose and serves no rational state interest. The state has a legitimate interest in protecting disclosure of a patient's confidential health care information. In State v. Almonte the court found that the legitimate interest of the patient in the privacy of his or her confidential health care information and communications with his or her health care provider is one that the legislature "may statutorily protect through imposition of a privilege." 644 A.2d at 298. It is clear that the prohibition-on ex parte contacts furthers the state's legitimate interest in protecting the privacy of a patient's confidential medical records. As previously mentioned in this decision, by prohibiting such contacts, except through discovery methods provided under the applicable rules of civil procedure, the state ensures that a patient's confidential health care information is not inadvertently released. Additionally, by restricting ex parte communications the state also helps to prevent unsupervised ex parte interviews, where a plaintiffs attorney could not object to an improper or inadvertent disclosure of privileged information. As such, this Court finds that the prohibition on ex parte communications is rationally related to the legitimate state interest of safeguarding and maintaining the integrity of a patient's confidential health care information.
The defendants also argue that there is no rational basis for the classification the legislature has drawn between workers' compensation proceedings and civil actions pursuant to § 5-37.3-4(b). The defendants claim that the CHCIA does not prohibit ex parte disclosures to the litigants in workers' compensation proceedings. The purpose of the Workers' Compensation Act ("Act"), R.I. Gen. Laws § 28-29-1, et seq. (1956) is to "eliminate waste and unnecessary cost by returning workers to the workplace and reducing compensation cost which, in turn reduce the cost to the employer". F.H. Buffington Co. v. Hanarahan 622 A.2d 470, 472 (R.I. 1995). The Act seeks to provide a "simple and expeditious procedure that employees can utilize in reclaiming compensation benefits." See id. It is therefore reasonable that the legislature would afford a lesser degree of protection to the health care information of an employee who has filed a workers' compensation claim then a patient who files a medical liability action. Especially, since in a workers' compensation claim, the relationship between the employee and their physician is less private and the employee has the option to opt out of the system. R.I. Gen. Laws § 28-33-8(c)(1) (1956) (requires health care providers to submit periodic reports regarding the employee's health). Thus, the disclosure distinctions between workers' compensation claims and civil actions under § (b)(8)(ii) does not serve to violate the equal protection clause.
Accordingly, this Court finds that § 5-37.3-4(b)(8)(ii) does not violate the due process or equal protection clause of the United States and Rhode Island Constitution.
 Separation of Powers
The defendants next contend that the legislature's prohibition on ex parte communications subverts the judiciary's power to govern discovery proceedings and the practice of law in violation of Article V and Article X, § 1 of the Rhode Island Constitution. The plaintiffs assert that § 5-37.3-4(b)(8)(ii) does not interfere with the court's authority to govern discovery or practice law. In particular, the plaintiffs note that even though the statute limits disclosure it provides for discovery pursuant to the applicable rules of civil procedure which are still governed by the court.
The separation of powers provisions of Article V and X prohibit the legislature from exercising judicial power or from subverting the power of the judiciary. Bartlett v. Danti, 503 A.2d 515, 517 (R.I. 1986); see also State v. Byrnes 456 A.2d 742, 744 (R.I. 1988). The exercise of judicial power" has been defined as "the control of a decision in a case or the interference with its progress, or the alteration of the decision once made." Advisory Opinion to the Governor 437 A.2d 542, 543 (R.I. 1981) (quoting Lemoine v. Martimeau 115 R.I. 233, 238 (1975)). For instance, in Lemoine, the court held unconstitutional a statute providing that during legislative session, the members of the General Assembly, whether they are litigants, counsel of record or witnesses, need not appear at trial or any action. 342 A.2d at 618. The court concluded that the statute was an impermissible exercise of judicial power and constituted an "unauthorized legislative encroachment on the judiciary's right and obligations to run its affairs." See id. at 620. Moreover, the court found that the statute took away the judiciary's discretion to act and placed the power of discretion with the members of the legislature. See id.
Section 5-37.3-4(b)(8)(ii) is not an unconstitutional exercise of judicial power. This statute does not attempt to control the decision in a case, interfere with the progress of a case or alter a decision once it has been rendered. In fact, the statute ensures that the judiciary retains the power to govern its discovery proceedings. Subsection (b)(8)(ii) only serves to limit disclosure in civil actions by prohibiting ex parte contacts while still allowing discovery under methods provided by the applicable rules of civil procedure. The legislature in enacting this statute seeks only to protect the privacy rights of patients and safeguard the integrity of confidential health care information and not to exercise judicial power. Moreover, §5-37.3-4(b)(8)(ii) does not subvert the power of the judiciary. This provision only places reasonable limitations on disclosure while continuing to leave the control of the case and the governing of discovery to the court.
For the foregoing reasons, this Court finds that § 5-37.3-4(b)(8)(ii) does not violate Article V and Article X, § 1 of the Rhode Island Constitution.
 Right to Justice
Article I, Section 5 of the Rhode Island Constitution guarantees the right to justice to all persons within the state. Bartlett, 503 A.2d at 518. Sections provides that,
 "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain a right and justice freely, and without purchase, completely and without denial; promptly and without delay; comforably to the laws."
Our Supreme Court has held that where the rights of litigants are "destroyed or materially impaired by imposition of [a] statute" then that statute unconstitutionally impairs the rights of litigants. Lemoine 342 A.2d at 621. As such, statutes that "impede or encroach upon the very basic aspects of the conduct of lawsuits" are deem to violate the state constitution. Boucher v. McGovern, 639 A.2d 1369, 1377 (R.I. 1994) (citing Bartlett v. Danti 503 A.2d 515, 517-18 (R.I. 1986)). In Bartlett, the Supreme Court held that § 5-37.3-6 violated Article I, Section 5 of the Rhode Island Constitution. 503 A.2d at 518. Section5-37.3-6 mandated that confidential health care information was not subject to compulsory legal process in any type of proceeding. See id. at 517. The court found that § 5-37.3-6 "precluded litigants from obtaining and introducing material evidence and thereby preventing litigants from effectively presenting their claims before the trier of fact". See id. at 518. Similarly, in Spalding v. Bainbridge the court held that it would amount to a denial of justice to dismiss a lawsuit for failure to post a surety for cost by a plaintiff too poor to do so.12 R.I. 244, 244-45 (1879).
The defendants contend that § 5-37.3-4(b)(8)(ii) prohibition against ex parte and informal ex parte contacts with a patient's treating physician violates their right to justice. The defendants claim that subsection (b)(8)(ii) specifically precludes a method of discovery approved by the Supreme Court, therefore, materially impairing their right to justice. The plaintiffs disagree and argue that § 5-37.3-4(b)(8)(ii) does not amount to a denial of justice. The plaintiffs assert that §5-37.3-4(b)(8)(ii) is a reasonable limitation imposed by the legislature and does not preclude discovery. In fact, the plaintiffs claim that § 5-37.3-4(b)(8)(ii) provides the defendants with a panoply of discovery methods" to obtain disclosure of pertinent confidential health care information.
Our Supreme Court has stated that Article I, Section 5 "should not be interpreted to bar the General Assembly from enacting laws that limit or place a burden upon a party's right to bring a claim in our courts." Dowd, 655 A.2d at 683. Such limits and burdens violate the constitution "only when the statute prohibits complete access for a generally recognized claim to and entire class of litigants." See id. Therefore, the legislature may place "permissibly * * * reasonable limits or burdens on the parties' right to have their claims adjudicated by the courts." Id.
Section 5-37.3-4(b)(8)(ii) prohibition on ex parte communications does not amount to a denial of justice. Nor does it encroach on the defendants' ability to obtain or introduce material; materially impair the defendants or prevent them from effectively litigating their claims before this Court. Subsection (b)(8)(ii) is not a complete bar to disclosure of confidential health care information. Subsection (b)(8)(ii) provides that disclosure may occur, "only under the discovery methods provided by the applicable rules of civil procedure." This Court finds that § 5-37.3-4(b)(8)(ii) is a reasonable legislative determination of when confidential health care information may be disclosed and by what means it may be disclosed.
 Vagueness
Finally, the defendants contend that § 5-37.3-4(b)(8)(ii) is unconstitutionally vague when read in conjunction with its surrounding provisions. In particular, the defendants argue that the statute is unclear as to whether the disclosure limitation of § 5-37.3-4(b)(8)(ii) is applicable to the enumerated exemptions under § 5-37.3-4(b).
A statute is deemed unconstitutionally vague when "its wording fails to alert the public of the statutes scope and meaning." City of Warwick v. Appt, 497 A.2d 721, 724 (R.I. 1985). A statute is not vague if the language used is commonly understood by persons of ordinary intelligence. See id.; see also Grayned v. City of Rockport 408 U.S. 104, 108 (1972) (a statute is not unconstitutionally vague if it gives "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."). The standard the court must use in determining the vagueness of a statute is dependent on the nature of the statute. See id. Therefore, a civil statute is subject to a lesser standard of scrutiny than a criminal statute. See id.
This Court finds the defendants' arguments to be without merit. Section5-37.3-4(b) is a civil statute. It provides that,
 "No consent for release or transfer of confidential health care information is required in the following situations:"
Provision (8)(ii) of the same section reads in pertinent part,
 "Disclosure by a health care provider of a patient's health care information which is relevant to a civil action brought by the patient against any person or persons other than that health care provider may occur only under the discovery methods provided by the applicable rules of civil procedure (federal or state). This disclosure shall not be through ex parte contacts and not through informal ex parte contacts with the provider by persons other than the patient or his or her legal representative."
The language of § 5-37.3-4(b)(8)(ii) is unmistakably clear and capable of being understood by persons of ordinary intelligence. When construing a statute, the general rules of construction must be applied. The court must look to the intent of the Legislature and attribute to the enactment a meaning most consistent with the intended purpose of the statute. Brennen, 529 A.2d at 637. This Court "must not construe a statute to reach an absurd result." Kaya, 681 A.2d at 261 (citing Beaudoin v. Petit 122 R.I. 469, 476 (1979)). The language of §5-37.3-4(b)(8)(ii) clearly states that the disclosure limitations are applicable to "civil actions." As such, a person of ordinary intelligence can deduce that civil actions include "medical liability actions." This provision provides a person with a clear understanding of who the statute applies to, "health care providers", what conduct is prohibited, "ex parte communications", and for what actions the provision applies, "civil actions".
 Waiver
In Lewis, our Supreme Court held that the privilege protections afforded by the CHCIA were automatically waived when a patient elected to bring a medical malpractice claim. 617 A.2d at 121-122. The defendants contend that to avoid addressing the constitutional infirmities of §5-37.3-4(b)(8)(ii) this Court should deem the patient-physician privilege waived and allow for ex parte communications. The plaintiffs agree that once a patient places his or her medical information at issue then the privileged is waived but only to the extent that a patient's health care information is relevant to the action.
Section 5-37.3-.4(b)(8)(ii) provides that,
 "[n]o consent for release or transfer of a patients confidential health care information is required where the patient who information is at issue brings a medical liability action against health care provider."
Although this provision serves as a waiver of the patient-physician privilege it does not allow an opponent to a medical malpractice action to have carte blanche over a patient's confidential health care information. In fact, the court in Lewis refrained from authorizing ex parte communication as an acceptable form of disclosure without first mentioning that the court's decision was based on the legislature's silence as to which discovery methods were applicable once the privilege had been waived. In construing a statute it is the courts task to effectuate the intent of the legislature. Wayne Distrib. Co. v. Rhode Island Comm'n For Human Rights. 673 A.2d 457, 460 (R.I. 1996) (quoting Rhode Island State Labor Relations Bd. v. Valley Falls Fire Dist.,505 A.2d 1170, 1171 (R.I. 1986)). The words in the statute must be given there plain and ordinary meaning. Accent Stores Desinn, Inc. v. Marathon House. Inc. 674 A.2d 1223, 1226 (R.I. 1996). In doing so, this Court "will not construe a statute to reach an absurd result." In re Advisory to the Governor 668 A.2d at 1248 (R.I. 1996). In looking at the plain meaning of the words, it is clear that the intent of the statute is that once a patient institutes a medical malpractice action the privilege is waived and consent is no longer required to release or transfer that patient's confidential health care information. However, in amending the statute to include subsection (b)(8)(ii)[3], it is clear that the intent of the legislature was to specify which discovery methods could be use once the privilege was waived.
Therefore, this Court finds that by bringing a medical malpractice action the plaintiffs have waived there statutory privilege. However, this waiver does not permit the defendants to use any formal or informal means of discovery they chose in obtaining the patient's health care information. As specified by the statute, disclosure shall not be through ex parte contacts and not through informal ex parte contacts with the provider by persons other than the patient or his or her legal representative.
 Conclusion
This Court declares that R.I. Gen. Laws § 5-37.3-4(b)(8)(ii) does not violate free speech, the equal protection clause and the due process clause of the United States and Rhode Island Constitutions. This Court further declares that § 5-37.3-4(b)(8)(ii) does not violate Article I, § 5, Article V or Article X, § 1 of the Rhode Island Constitution, and that the statute is not void for vagueness. Accordingly, the defendants motion for order declaring §5-37.3-4(b)(8)(ii) unconstitutional is denied.
Counsel shall prepare an order consistent with this decision.
[1] The defendants are Robert P. Curhan, M.D., Robert Curhan, M.D., Inc., Peter G. Brasch, Peter F. Deblasio, Jr., William G. Tsiaris, Michael Rosenberg, Dominick Zangari, Jr., Rhode Island Hospital, Jay M. Daly, Capital Imaging Group, Inc., Ira J. Singer, Stephen L. Blazar, Orthopedic Group, Inc., Stephen J. Petterutti, D.O. and Kent County Memorial Hospital.
[2] The plaintiffs are Mary Catherine Pitre, Dale Pitre, Wayne Pitre, p.p.a. Mary Catherine and Travis Pitre, p.p.a. Mary Catherine Pitre, Doreen Vasconellos, Thomas B. MacMurry and Linda M. Yates.
[3] "(ii) Disclosure by a health care provider of a patient's health care information which is relevant to a civil action brought by the patient against any person or persons other than that health care provider may occur only under the discovery methods provided by the applicable rules of civil procedure (federal or state). This disclosure shall not be through ex parte contacts and not through informal ex parte contacts with the provider by persons other than the patient or his or her legal representative."