[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The plaintiff, Lombeau, Inc. ("plaintiff"), has petitioned this Court for a preliminary injunction seeking to enjoin the defendants, Steve Woerner, in his capacity as Finance Director of the Town of Lincoln, and John MacQueen, Jr., in his capacity as Director of the Town of Lincoln Public Works (collectively "defendants" or "Town"), from discharging water onto its property.[1] The defendants oppose plaintiff's request arguing that plaintiff lacks standing to pursue an injunction, plaintiff's claim lacks the requisite urgency for an injunction, and plaintiff's rights with regard to the subject property are too unclear for an injunction to be granted. In addition, defendants maintain that they have used the land for the relevant statutory period and, therefore, have acquired a prescriptive easement over the property.
 FACTS AND TRAVEL
Stephen J. Beauregard is a shareholder and President of the plaintiff corporation, Lombeau, Inc. In 1986, plaintiff purchased property in the Town of Lincoln (the "Town") — identified as Assessor's Plat 7, Lots 46, 47, 77, and 147 — with the intention of creating a residential subdivision. In that same year, Mr. Beauregard purchased a nearby parcel of land, Assessor's Plat 7, Lot 162, also located in Lincoln. Subsequently, Mr. Beauregard conveyed his land to the plaintiff, Lombeau, Inc. In total, plaintiff's property (the "Property") consists of approximately 6.9 acres of land in an area of Lincoln zoned for residential use.
Following the initial purchase of land in 1986, plaintiff submitted to the Town of Lincoln, as well as to the Rhode Island Department of Environmental Management ("DEM"), a plan to subdivide the Property into fourteen parcels of land for the purpose of constructing multi-family residential dwellings. Thereafter, on or about September 1, 1986, plaintiff filed a request for a Fresh Water Wetlands Applicability Determination with the DEM to determine whether the Property could be developed. In a letter dated December 15, 1986, the DEM indicated the Property was subject to storm water flowage and, therefore, it fell under the jurisdiction of the Fresh Water Wetlands Act. As a result, any proposed alterations regarding the Property would require DEM approval. Two years later, in 1988, plaintiff requested the Town's permission to install a drain piping system to drain surface water from the Property. The Director of the Department of Public Works at the time, Robert Schultz, denied this request.
It is plaintiff's position that the Town's actions, within approximately the last five years, have created further difficulties for proposed construction and development of the Property. Specifically, plaintiff contends that the Town has directed three new sources of surface water runoff to drain onto the Property. First, plaintiff maintains that the Town installed storm water drainage pipes underneath nearby Progress Street, and that the pipes collect storm water from that street and discharge the same onto plaintiff's property. Second, plaintiff asserts that the Town erected a sewer pipeline directly through the Property. Finally, plaintiff alleges that the Town has constructed drainage facilities which direct the flow of surface water onto the Property from school property located on an adjacent parcel of land. The plaintiff claims to have discovered the latest drainage and wetland problems during recent attempts to develop the property.
On March 1, 2005, plaintiff filed a complaint against numerous individuals in their official capacities for the Town of Lincoln, seeking injunctive relief from an alleged continuous trespass through the discharge of water onto its property. The plaintiff contends that it is entitled to injunctive relief regardless of the extent of the damage or intent of the trespasser. In response, the defendants denied the allegations and set forth a number of affirmative defenses — statute of limitations, laches, failure to exhaust administrative remedies, and lack of standing. The defendants argue that plaintiff's claim lacks the requisite urgency for an injunction; additionally, defendants contend that plaintiff's rights with regard to the Property are unclear and, therefore, an injunction should not issue.
A hearing on this matter was held on July 26, 2005 and August 2, 2005. The first witness to testify was defendant John MacQueen Jr., the Director of Public Works for the past three years and formerly the Highway Superintendent for a period of five and a half years. As Highway Superintendent, Mr. MacQueen was responsible for the plowing and drainage departments, as well as overseeing personnel. In his current position as Director of Public Works, he is responsible for drainage line location and maintenance throughout the Town. Mr. MacQueen testified that in his view, the Town has drainage pipes discharging water onto the Property and that water is directed to plaintiff's land from three neighboring streets — Ballou Avenue, Wood Road, and Progress Street. In addition, he described problems with the drainage system of a new baseball field, built in 2002, which has caused flooding of Ballou Avenue, located adjacent to plaintiff's property. Finally, Mr. MacQueen testified that there is a sewage line running across plaintiff's property. He indicated that although he initially thought the Town had an easement for the sewage line, such an easement could not be found.
The next witness was John P. Caito, a registered professional engineer in Rhode Island and Massachusetts with over twenty-three years experience. Mr. Caito was qualified as an expert in civil engineering and provided reliable testimony regarding the conditions surrounding the Property. Mr. Caito described himself as a civil, environmental, and real estate development engineer, and further testified that drainage systems and drainage patterns have been the focus of his career.
Following thorough research — which included a review of all relevant maps, inspection of the site, and an interview with the principals of Lombeau Inc. — Mr. Caito determined that municipal drainage and pipe structures were directing water onto plaintiff's property. Mr. Caito testified that there are three direct channelized flow paths of water onto the Property — two on Ballou Avenue and one on Progress Street — and one indirect flow path originating from the nearby school's drainage system. He stated that the two pipes from Ballou Avenue, which were either on plaintiff's property or very close to the property line, were definitely discharging water on the Property. Mr. Caito further testified that the pipe on Progress Street is blocked, along with the catch basin, resulting in an expansion of the watershed and greater discharge onto plaintiff's land. In addition, he found that neighborhood ball fields generate subtle water drainage which eventually ends up at Ballou Avenue and then drains onto plaintiff's property. Lastly, Mr. Caito described how water is drained from three catch basins near the local school through a pipe which goes below the school building and onto Ballou Avenue and that ultimately, as a result of the size and configuration of these structures, water drains onto plaintiff's property.
Mr. Caito's investigation led him to conclude that the water that the Town discharged onto plaintiff's property caused the land to flood and develop into a wetland environment. He also stated that the runoff contributing to the condition of plaintiff's property had increased within the last five years as a result of a number of factors: expansion of the nearby school, work done to the ball fields, development of a nearby property, and the extension of Wood Road and its drainage system. Finally, Mr. Caito reviewed a final report prepared for the Town in April 2003 regarding these drainage system issues that offered alternatives to draining water onto the plaintiff's property and confirmed the Town has not implemented any of those options.
The final witness to testify was Stephen Beauregard, the President of Lombeau, Inc. He stated that he was aware that water was draining onto the Property in 1986 when the plaintiff initially purchased the land. Mr. Beauregard testified that at that time the drainage was limited to one small pipe from Progress Street which created a small fifteen inch channel on the Property. Additionally, Mr. Beauregard described how there was a significant change in the amount of water being drained onto the land within the last five years. He claimed that the water flow increased to the point where the Property was continuously flooded and noted the same sources for the increased drainage as did Mr. Caito.
Following the conclusion of the hearing, the parties submitted written arguments in support of their positions. In the defendants' post-hearing memorandum, they raised their prescriptive easement argument for the first time. On August 11, 2005, plaintiff filed a motion to strike the defendants' defense and legal argument concerning a prescriptive easement. Plaintiff claimed that defendants waived their right to assert a prescriptive easement argument by not raising the issue earlier. On August 26, 2005, this Court heard oral arguments from the parties regarding the plaintiff's motion to strike, and thereafter denied said motion, and reserved decision on the preliminary injunction issue.
This matter is now before the Court to decide whether to grant plaintiff's motion for a preliminary injunction.
 DISCUSSION
A. Standing
Defendants argue that plaintiff is not entitled to injunctive relief because plaintiff lacks sufficient interest to maintain this action. It is defendants' position that plaintiff does not have standing to bring this action because the Town obtained title to the plaintiff's property by virtue of a tax sale. This Court finds the defendants' argument unpersuasive.
Although defendants have accurately stated that plaintiff's failure to pay taxes on the Property resulted in a tax sale of the land, the plaintiff remains the record owner of the Property. Therefore, pursuant to G.L. 1956 § 44-9-19, plaintiff has an absolute right to redeem the property from the Town at any time prior to the filing of a petition for foreclosure. Section 44-9-19 provides as follows:
 "(a) Any person having an interest in land sold for nonpayment of taxes, or his or her heirs or assigns, at any time prior to the filing of a petition for foreclosure under § 44-9-25, if the land has been purchased by the city or town and has not been assigned, may redeem the land by paying or tendering to the treasurer the sum for which the real estate was purchased, plus a penalty which shall be ten percent (10%) of the purchase price if redeemed within six (6) months after the date of the collector's sale, and an additional one percent (1%) of the purchase price for each succeeding month, together with all charges lawfully added for intervening taxes, which have been paid to the municipality, plus interest thereon at a rate of one percent (1%) per month, and expenses assessed subsequently to the collector's sale."
Under this statute, plaintiff is entitled to redemption until a petition for foreclosure has been filed and, as a result, it continues to maintain an interest in the underlying land sufficient to satisfy standing requirements. See Ahlburn v. Clark, 728 A.2d 449, 451
(R.I. 1999) ("In deciding whether a particular plaintiff possesses the requisite standing, a court should draw the line not between whether the plaintiff has suffered a substantial injury or an insubstantial injury, but between injury and no injury.").
B. Prescriptive Easement
Defendants' claim of prescriptive easement is not supported by the record. The defendants' first mention of their position with regard to a claim of prescriptive easement was in papers filed after the close of the evidence. Moreover, the defendants have not satisfied their burden of proof with respect to the elements of the claim.
Relying primarily on the testimony of Mr. Beauregard, one of the principals of the plaintiff, Lombeau Inc., the Town asserts that is has met the multifaceted requirements necessary to establish a prescriptive easement. In order to have an easement by prescription, one must demonstrate, by a preponderance of clear and satisfactory evidence, "actual, open, notorious, hostile, and continuous use under a claim of right for ten years[.]" Altieri v. Dolan, 423 A.2d 482, 483 (R.I. 1980) (citations omitted). Mr. Beauregard's testimony, concerning his knowledge of a small fifteen inch channel of water draining onto the Property in 1986, is not sufficient to satisfy defendants' heightened burden of proof on the issue.
The defendants have not set forth adequate evidence to substantiate a prescriptive easement claim. The evidence clearly indicated that the amount of water entering the plaintiff's property significantly increased within the last five years as a result of a number of actions taken by the Town — the expansion of the school's drainage system, the construction of the baseball field and its drainage structure, and the expansion of the drainage system coinciding with the extension of Wood Road. In addition, the defendants failed to present clear and satisfactory evidence that the water being discharged onto the plaintiff's property was caused by structures that were actual, open, and notorious. As a result, this Court finds that defendants have not presented evidence sufficient to meet their burden on the prescriptive easement claim.
C. Preliminary Injunction
"In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo."Pucino v. Uttley, 785 A.2d 183, 186 (R.I. 2001) (citations omitted).
In determining the reasonable likelihood of success on the merits, it is only required that the moving party make out a prima facie case. DiDonato v. Kennedy,822 A.2d 179, 181 (R.I. 2003) (citing and quoting Fundfor Community Progress v. United Way of Southeastern NewEngland, 695 A.2d 517, 521 (R.I. 1997)). Furthermore, irreparable harm is considered an injury "presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." Fund for Community Progress, 695 A.2d at 521
(citations omitted). The equities are determined by "examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." Id. (citingIn re State Employees' Unions, 587 A.2d 919, 925 (R.I. 1991)). In total, "a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo." Fund for Community Progress, 695 A.2d at 521
(quoting Coolbeth v. Berberian, 112 R.I. 558, 564,313 A.2d 656, 659 (1974)).
Whether plaintiff is entitled to a preliminary injunction must be determined through an application of the four-part test set forth above. In the case at hand, the first prong, plaintiff's likelihood of success on the merits, requires a finding that plaintiff has established a prima facie case of continuous trespass on its land. A continuous trespass is "[a] trespass in the nature of a permanent invasion on another's rights."Black's Law Dictionary 1541 (11th ed. 2004). The Rhode Island Supreme Court has previously found water drainage to constitute a continuous trespass. See Klowan v.Howard, 83 R.I. 155, 113 A.2d 872 (1955). In addition, our Supreme Court has held that:
 "no one has a right to collect surface water in any considerable quantity upon his own premises and then turn the same in a concentrated form upon the premises of his neighbor in such a manner as to cause him damage. . . . A city has no greater power over its streets, in the matter of disposing of surface water which accumulates thereon, than a private individual has in disposing of the surface water which falls or collects upon his own land." Id
(quoting Johnson v. White, 26 R.I. 207, 208-09, 58 A. 658, 659 (1904)).
Here, the plaintiff met its burden of presenting a prima facie case of continuous trespass on its property. The testimony of Mr. MacQueen and Mr. Caito established the existence of constant water drainage onto plaintiff's land from multiple sources maintained by defendants. Nothing in the record suggests defendants were given permission to discharge the water onto the Property. As a result, the Court finds that plaintiff has a reasonable likelihood of success on the merits with respect to its continuous trespass case.
As for the second prong of the preliminary injunction analysis, the Court is persuaded that plaintiff will suffer irreparable harm without the requested relief. According to Mr. Caito, plaintiff's land has been subject to increased runoff within the last few years resulting in extensive flooding and the development of a wetland environment on the property. Due to the condition of the Property, plaintiff has been denied all substantial use of the land. It is the Court's view that, if continued, the drainage onto the Property will create even more significant obstacles for future drainage from the Property and could permanently deny plaintiff any future use of the Property. Such problems, relating to the land's suitability for development, cannot properly be cured by legal remedy.
Next, the Court must determine whether plaintiff has the balance of the equities in its favor. Although defendants would undoubtedly have to incur some expense to redirect the water flow away from plaintiff's property, plaintiff currently bears the entire burden of the existing water drainage system. Moreover, as previously noted, continued drainage onto the Property would only foster the existing wetland environment and, potentially, deny plaintiff any practicable use of the land. The grant of a preliminary injunction would serve to tip the scales of equity towards the center.
Finally, this Court finds that the requested injunction would operate to maintain the status quo. A preliminary injunction, requiring the defendants to cease drainage of water onto plaintiff's land, would prevent further deterioration and damage to the property until a final and formal determination of the rights of the parties and the merits of the controversy can be made.[2] Considering that each prong required for the issuance of a preliminary injunction has been met by the underlying facts of the case, this Court holds that the plaintiff is entitled to injunctive relief.
 CONCLUSION
The Court holds that plaintiff has sufficient interest in the property, by its equitable right of redemption, to possess standing to adjudicate the issues. In addition, the Court finds that the defendants have failed to meet their burden of presenting clear and satisfactory evidence of a prescriptive easement to drain water onto the Property. Furthermore, the Court is satisfied that the plaintiff is entitled to a preliminary injunction to prevent continued flooding of its property — identified as Assessor's Plat 7, Lots 46, 47, 77, 147 and 162 — located in the Town of Lincoln. The plaintiff has a reasonable likelihood of success on the merits of its continuous trespass claim, would suffer irreparable harm without an injunction, has the balance of equities in its favor and has shown that the requested injunction will maintain the status quo. The defendants are ordered, within 90 days of the entry of an order in this matter, to take all reasonable steps necessary to cease the drainage of water onto plaintiff's land from the sources identified herein, until the merits of the controversy are determined through a full adjudication of the rights of the parties.
[1] Although the plaintiff has requested multiple types of injunctive relief, including both mandatory and preliminary injunctions, the Court prefers to treat the plaintiff's motion as one for a preliminary injunction.
[2] Although the Court recognizes the legal precedent holding that a mandatory injunction may be the appropriate remedy where a continuous trespass is found, the Court prefers to grant a preliminary injunction until the case reaches a final disposition. See Santilli v. Morelli,102 R.I. 333, 230 A.2d 860 (1967); Adams v. Toro, 508 A.2d 399 (R.I. 1986).