Elizabeth J. DOWD, Individually and as
Natural Parent and Next Friend of
Casey M. Dowd, a Minor

v.

Douglas A. RAYNER, M.D., et al.

No. 93–399–Appeal.

Supreme Court of Rhode Island.

March 6, 1995.

E. Paul Grimm, Decof & Grimm, Providence, for plaintiff.

John F. Dolan, Elizabeth Flynn Sullivan, Rice, Dolan & Kershaw, Rebecca Tedford Partington, Sp. Asst. Atty. Gen., Providence, for defendants.

## OPINION

LEDERBERG, Justice.

The plaintiffs Elizabeth J. Dowd and her minor daughter Casey M. Dowd appealed to the Supreme Court from the entry of a summary judgment in favor of the defendant John H. McGowan, M.D. In his motion for summary judgment, the defendant successfully argued that the statute of limitations on medical malpractice actions is constitutional and therefore barred the plaintiffs' claims against him. On appeal, the plaintiffs challenged the constitutionality of that statute by arguing that the statute violates the equal protection of the laws and the entitlement to remedies as guaranteed by the Constitution of the State of Rhode Island. For the reasons stated herein, we deny the appeal and affirm the judgment of the Superior Court.

## FACTS AND PROCEDURAL HISTORY

Elizabeth J. Dowd (Elizabeth) gave birth to her daughter Casey M. Dowd (Casey) on July 5, 1984, in the Westerly Hospital in Westerly, Rhode Island. On December 11, 1986, plaintiffs brought a medical malpractice action against Douglas A. Rayner, M.D., Elizabeth's obstetrician, Obstetrical and Gynecological Associates, P.C., and the Westerly Hospital for permanent injuries sustained by Casey as a proximate result of their alleged negligence in Casey's prenatal and postnatal care. In October 1991, over seven years after the alleged malpractice occurred, plaintiffs amended their complaint to add defendants John H. McGowan, M.D. (McGowan), the pediatrician caring for Casey at her birth, and Francis Palaia, M.D. (Palaia), the anesthesiologist at Casey's birth.

As part of the discovery process, plaintiffs deposed McGowan in June 1987 and learned that Palaia assisted in the intubation of Casey shortly after her birth. Palaia, however, in a deposition taken by plaintiffs in 1993,

denied having assisted in Casey's intubation. Because of this contradiction in the testimony of the two physicians, plaintiffs attempted to depose McGowan again in 1993.

On February 4, 1993, this court issued an opinion, *Bakalakis v. Women & Infants' Hospital*, 619 A.2d 1105, 1106 (R.I.1993), a medical malpractice action, that concluded that G.L.1956 (1969 Reenactment) § 9-1-14.1(a), as amended by P. L.1984, ch. 236, § 1, does not allow a minor to amend a pending complaint to include new defendants more than three years after the occurrence of the incident that gave rise to the complaint. Relying on this court's holding in *Bakalakis,* on February 22, 1993, McGowan moved for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure and for final judgment pursuant to Rule 54(b), contending that plaintiffs' action against him was time-barred under the statute of limitations on medical malpractice actions set forth in § 9-1-14.1. McGowan then filed a motion for a protective order in March 1993 arguing that he had already been deposed in 1987. The plaintiffs opposed McGowan's motion for summary judgment on the ground that the statute was unconstitutional. After a hearing, the trial justice in June 1993 granted McGowan's motions for a protective order and for summary judgment, and a final judgment under Rule 54(b) was entered on the same day. In response, plaintiffs appealed pursuant to G.L.1956 (1985 Reenactment) § 9-24-1, arguing that § 9-1-14.1 violates the equal protection of the laws and the "open court" guarantee of the Rhode Island Constitution.

## THE CONSTITUTIONALITY OF SECTION 9-1-14.1

On appeal, plaintiffs contended that § 9-1-14.1 is unconstitutional because it "places minors who sue doctors in a worse position than minors who sue other tort defendants" and that it "treats minors who sue doctors worse than it treats adults who sue doctors." We disagree.

Even though the Rhode Island Constitution contained no specific equal pro-

tection statement when § 9–1–14.1 was enacted in 1976, (P.L.1976, ch 244, § 8),[1] this court has held that article 1, section 2, of the State Constitution provided "essentially a guarantee of equal protection of the laws" to all persons of this state.[2] *City of Warwick v. Almac's, Inc.*, 442 A.2d 1265, 1270 (R.I.1982); *Sweetman v. Town of Cumberland*, 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976). Although plaintiffs contended that § 9–1–14.1 violates the equal protection of the laws by creating an impermissible classification for minors who bring medical malpractice claims, it is well settled that the constitutional guarantee does not prohibit all legislative classifications. *Boucher v. Sayeed*, 459 A.2d 87, 91 (R.I.1983). In determining whether the classification produced by a statute survives the equal protection analysis, the nature of the classification and the individual rights possibly violated by the legislation must be examined. *Kennedy v. State*, 654 A.2d 708, 711 (R.I., 1995). When a statute, such as the one before us, involves neither a suspect classification nor a fundamental right, nor a gender-based classification, the proper standard of review is minimal scrutiny. *Id.* at 711; *see, e.g., Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (freedom of choice to marry may not be restricted by invidious statutory discrimination); *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("rigorous" or strict scrutiny is employed in the analysis of legislation that infringed upon the right to marry); *Craig v. Boren*, 429 U.S. 190, 204, 97 S.Ct. 451, 460, 50 L.Ed.2d 397, 411 (1976) (gender-based classification must be substantially related to the achievement of the statutory objective); *Boucher*, 459 A.2d at 91–92 (the right to bring suit in a medical malpractice action is not a fundamental right). In fact, both parties on appeal agreed that the proper standard of review for § 9–1–14.1 is minimal scrutiny which requires that the legislation under review be "rationally related to a legitimate state interest." *New Orleans v.*

*Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976) (per curiam). Moreover, legislative enactments of the General Assembly are presumed to be valid and constitutional, *Kass v. Retirement Board of the Employees' Retirement System of the State of Rhode Island,* 567 A.2d 358, 360 (R.I.1989), and the party challenging the constitutional validity of a statute carries the burden of persuading the court beyond a reasonable doubt that the legislation violates an identifiable aspect of the constitution. *Id.; In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 552 (R.I.1984).

■ With these principles in mind, we now examine whether § 9–1–14.1 is "rationally related to a legitimate state interest." The statute provided in pertinent part:

> "Statute of limitations.—Notwithstanding the provisions of section 9–1–14 of the general laws, an action for medical malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action, providing, however, that:
>
> (a) One who is under disability by reason of age, mental incompetence or otherwise, and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring said action within three (3) years from the removal of said disability."

Section 9–1–14.1 was enacted in 1976 (P.L. 1976, ch. 244, § 8) as a legislative response to a medical malpractice crisis in the state. *See Boucher,* 459 A.2d at 88–89 (describing the medical malpractice crisis in Rhode Island in the mid–1970s). Faced with the crisis, the Legislature had legitimate interests in limiting the number of medical malpractice suits but, at the same time, in providing victims of medical malpractice with a fair opportunity to have their claims adjudicated in the courts. In the case of minors on whose

1. The Rhode Island Constitution was amended in 1986 (Constitutional Convention Dec. 4, 1986) to include, *inter alia,* an equal protection clause. R.I. Const. art. 1, sec. 2.

2. In 1976, article 1, section 2, of the Rhode Island Constitution provided that "[a]ll free gov-

ernments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

behalf suit has not been brought within three years of the alleged malpractice, § 9–1–14.1 permits such individuals up to three years after reaching the age of majority to initiate a suit. This provision ensures that minors are not disadvantaged by their disability during minority. But, in those cases in which actions have been initiated on behalf of minors, plaintiffs are required to join all potential defendants within three years of the alleged malpractice or be time-barred against those defendants not so joined. The rational purpose of this provision is the restriction of multiple suits or amended complaints filed against additional defendants on a serial or piecemeal basis. In any event, the statute does not jeopardize the right of minors to have their claims adjudicated in court because the limitation applies only in cases where a suit has been brought on behalf of the minor. Consequently, we conclude that a "reasonable basis" supported the Legislature's enactment of § 9–1–14.1 in 1976 and that the legislation is not so "purely arbitrary" as to violate the equal protection guarantee of the State Constitution under minimal scrutiny review. *Soares v. RIGHA Group, Inc.*, 581 A.2d 1030, 1030 (R.I.1990) (per curiam).

■ The plaintiffs did not dispute that a medical malpractice crisis justified the enactment of the statute in 1976, but relying on *Boucher*, argued that the relevant time period for determining whether a legitimate interest exists should be either today or the time of the amendments or reenactment of the statute, not the time of the original enactment.[3] *Boucher* reviewed a 1976 statute that created special medical liability review panels to screen and adjudicate medical malpractice claims. *Boucher*, 459 A.2d at 89. By 1980, a study of the special panels concluded that the process had "failed to achieve the objective for which it was designed." *Id.* In response, the Legislature, in 1981, "amended [the statute] in its entirety and established a substantially different system for the processing of medical malpractice

complaints." *Id.* The plaintiffs in *Boucher* argued that the 1981 amendment denied medical malpractice claimants the equal protection of the laws because it treated them differently from other tort plaintiffs. *Id.* at 91. In applying the minimal scrutiny review and in concurring with the trial justice's judicial notice that "no malpractice crisis existed in 1981," this court struck down the 1981 amendment, ruling that "[a]bsent a crisis to justify the enactment of such legislation," no rational basis would support the unequal treatment of medical malpractice litigants. *Id.* at 92–93.

The plaintiffs in the case before us argued that, under *Boucher*, this court should examine events at the time of the amendments and reenactment of § 9–1–14.1 to determine whether a legitimate interest existed to justify the statute. We disagree. *Boucher* focused on whether a legitimate state interest existed in 1981, when the statute at issue was amended, rather than in 1976, when the statute was originally enacted, because the claim-processing system challenged in *Boucher* was created in 1981 and was "substantially different" from the system originally established in 1976. In contrast, in the case before us, the statute of limitations created by the original enactment in 1976 has remained substantially the same since 1976. Thus, our inquiry must focus on the time when the statute of limitations on medical malpractice claims was first enacted, not on the times when subsequent modifications were made. In so doing, we have concluded that the enactment of § 9–1–14.1 in 1976 was "rationally related to a legitimate state interest" and that the enactment did not offend the equal protection guarantee of the State Constitution. *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517, 49 L.Ed.2d at 517.

■ The plaintiffs next argued that § 9–1–14.1, when applied to minors, violates the right to justice or the open courts guarantee embodied in article 1, section 5, of the Rhode Island Constitution because the statute re-

---

3. General Laws 1956 (1969 Reenactment) § 9–1–14.1, as enacted by P.L.1976, ch. 244, § 8, was amended in 1981 and 1984, re-enacted in 1985, and was again amended in 1988. The 1988 amendment applied the limitation on malprac-

tice actions to plaintiffs in legal, veterinary, accounting, insurance, and real estate malpractice cases, thereby further undermining plaintiffs' equal protection argument. P.L.1988, ch. 392, § 1.

quires that a "minor's personal right to recover [be] completely dependent on her parents' out-of-court decision not to sue someone," and argued further that the statute "effectively eliminates the child's own personal right to recover." This court has explicitly held that article 1, section 5, "should not be interpreted to bar the General Assembly from enacting laws that limit or place a burden upon a party's right to bring a claim in our courts." *Walsh v. Gowing*, 494 A.2d 543, 547 (R.I.1985); *Kennedy v. Cumberland Engineering Co.*, 471 A.2d 195, 198 (R.I. 1984). Such limits or burdens violate the constitutional protection mandated by article 1, section 5, only when statutes "prohibit court access *absolutely* for a generally recognized claim to a class of plaintiffs." (Emphasis added.) *Kennedy*, 471 A.2d at 198. Except for an absolute prohibition, however, the Legislature may place "permissibly * * * reasonable limits or burdens on the parties' right to have their claims adjudicated by the courts." *Id.*

In the instant case, § 9–1–14.1(a) deters minors from bringing medical malpractice claims *only if* an action has been initiated on their behalf. Thus, we are precluded from concluding that a "total denial of access" to the courts obtained in the adjudication of malpractice claims on behalf of minors. *Id.* Moreover, statutes of limitations have generally been upheld as reasonable legislative determinations of when to foreclose the right of a plaintiff to bring an existing claim, and such limitations do not amount to an unconstitutional deprivation of rights. *Id.; Young v. Park*, 116 R.I. 568, 573, 359 A.2d 697, 700 (1976). Therefore, it is the conclusion of this court that § 9–1–14.1 places a "reasonable [limit] * * * on the parties' right to have their claims adjudicated by the courts" and hence does not violate the open courts provision of article 1, section 5, of the Rhode Island Constitution. *Kennedy*, 471 A.2d at 198.

Consequently, we are compelled to disagree with plaintiffs' contentions that § 9–1–14.1 denies them either the equal protection of the laws or access to the courts as guaranteed by our State Constitution, and we thus conclude that § 9–1–14.1 is constitutional.

■ *Bakalakis* determined that § 9–1–14.1(a) barred a minor from amending a pending complaint to include new defendants more than three years after the occurrence of the incident that gave rise to the cause of action, *Bakalakis*, 619 A.2d at 1106, but did not address the constitutionality of the statute because that issue was not raised by the parties. Having concluded that the statute comports with the constitutional mandates of equal protection and entitlement to remedies, our holding in *Bakalakis* must be applied to the instant case.

*Bakalakis* held that "if the Legislature did not intend to limit a minor's ability to initiate medical malpractice actions, subsection (a) of § 9–1–14.1 would be unnecessary" and held further that a minor on whose behalf a suit has been initiated within three years of the alleged medical malpractice may not benefit from the tolling of § 9–1–14.1(a). 619 A.2d at 1107. Thus, minors are treated in exactly the same way as adults with medical malpractice claims. In other words, minors *and* adults must join all defendants within three years of the alleged malpractice or be time-barred under § 9–1–14.1. Because the case before us presents facts almost identical to those in *Bakalakis*, we are constrained to apply our holding in that case to the instant appeal. Consequently, plaintiffs could not permissibly add McGowan as a defendant in 1991, more than seven years after the occurrence of the alleged medical malpractice act in 1984. Therefore, we affirm the granting of McGowan's motion for summary judgment.

## MOTION FOR A PROTECTIVE ORDER

■ Lastly, plaintiffs argued that the trial justice erred in granting McGowan's motion for a protective order. We disagree with plaintiffs. In reviewing a decision of a trial justice in granting a party's motion for a protective order, this court has adopted the standard followed in the federal courts, namely, a trial court has " 'broad discretion' in its handling of discovery, and its decision to allow or deny discovery is reviewable only for abuse of discretion." *Bashforth v. Zampini*, 576 A.2d 1197, 1201 (R.I.1990) (quoting

*Brune v. Internal Revenue Service,* 861 F.2d 1284, 1288 (D.C.Cir.1988)).

The plaintiffs contended that because their deposition of Palaia disclosed a conflict in the testimony of the two doctors regarding the identity of the person responsible for intubating or re-intubating Casey shortly after her birth, a second deposition of McGowan was required. The trial justice pointed out that plaintiffs had deposed McGowan for over five hours in 1987, that parties "always have conflicts in depositions," and that inconsistencies in testimony do not justify repeated depositions, but can be resolved at trial. We concur with the trial justice and conclude that the trial justice did not abuse his discretion in granting McGowan's motion for a protective order.

In conclusion, this court holds that § 9–1–14.1 offends neither the equal protection of the laws nor the open courts guarantee of the Rhode Island Constitution. Moreover the trial justice did not abuse his discretion in granting the motion for a protective order of defendant McGowan. Accordingly, we deny and dismiss the plaintiffs' appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.