DECISION
This matter comes before the Court on the Defendants' Motion for Summary Judgment. The Defendants argue that the Plaintiffs' Amended Complaint is time-barred, pursuant to G.L. 1956 § 9-1-14.1. The Plaintiffs have objected and assert that the applicable "discovery rule" provision, found in § 9-1-14.1(2), has tolled the three-year statute of limitations as found in that rule and, thus, amendment of the original complaint is proper.
 I. Facts
The plaintiffs in this matter, Jennifer Quinn and Leonard Croft, individually and as parents for their minor daughter, Kaisey Croft (Plaintiffs), originally filed this medical malpractice action on August 27, 1999, naming David Tien, M.D., Tej Bansal, M.D., and Tej Bansal, Inc., as defendants. In January 2001, the Plaintiffs filed an amended complaint naming Rhode Island Hospital pathologists Selina Cortez, M.D., and King To, M.D., as well as Rhode Island Hospital (the defendants in the amended complaint are collectively referred to as Defendants). The basis for the suit stems from the allegedly negligent treatment Kaisey Croft received while a patient at Rhode Island Hospital. A review of the timeline of events is necessary.
A. Kaisey's diagnosis and treatment
On or about December 10, 1996, the parents of Kaisey Croft brought then three-year-old Kaisey to Dr. Tien, a pediatric opthamologist at Rhode Island Hospital/Hasbro Children's Hospital. A large tumor was discovered in the eye and a diagnosis of retinoblastoma, a rare childhood cancer of the eye, was proffered. Kaisey's parents discussed the diagnosis with Dr. Tien. Six days after the first visit to the hospital, on or about December 16, 1996, the eye was removed. On or about December 16, 1996, the enucleated eye was examined by the Pathology Department at Rhode Island Hospital. According to the Plaintiff's affidavit, a doctor from the Pathology Department at Rhode Island Hospital, later identified as Dr. Cortez, informed her that the tumor in the eye had not spread out of Kaisey's eye; Dr. Cortez, in her answers to interrogatories, refutes that a conversation took place.[1]
In April 1997, Kaisey returned to the hospital because of complaints about her new prosthetic eye. In June 1997, as a result of continuing problems with the prosthesis, Kaisey again returned to the hospital. New tests revealed new tumor growths in the bones of the eye socket. Kaisey's parents decided to transfer medical care to Dana Farber Cancer Institute/Children's Hospital in Boston.
At Dana Farber, the patient was diagnosed with metastatic disease. She underwent chemotherapy, radiation and, in December 1997, a bone marrow transplant.[2] The intense radiation and chemotherapy treatment lasted eighteen months. As part of the treatment at Dana Farber, nonparty Dr. Douglas Anthony, a neuropathologist at Boston Children's Hospital, reevaluated tissue taken during the December 1996 surgery. Dr. Anthony re-read the slides originally read by pathologist Dr. Cortez of Rhode Island Hospital. Dr. Anthony prepared a written report in June 1997, in which he identified the structures within the eye where he found signs of a tumor. His report does not criticize Dr. Cortez or her findings. However, it appears that the slides showed more extensive cancer than originally diagnosed. That report became part of the patient's record at Dana Farber. A copy of the report was also sent to Dr. Cortez.
In August 1997, Dr. Robert Petersen, Kaisey's treating opthamologist at Dana Farber, wrote a letter to the original defendant opthamologist, Dr. Tien, with regards to his review of the patient's pathology specimen. Dr. Petersen wrote in the letter, "No doubt, the tumor got out of the eye locally . . . ." Copies of the letter were sent to the defendant pathologist, Dr. Cortez, and Dr. Flynn of Rhode Island/Hasbro Children's Hospital, Kaisey's pediatrician. Additionally, in a December 1998 meeting with Kaisey's parents, Dr. Petersen informed the parents that he believed that the tumor, at the time of removal, had already invaded further into the eye than was originally thought by the doctors in Rhode Island.
At another December 1998 meeting, the parents spoke with Kaisey's treating oncologist at Dana Farber, Dr. Mark Kieran. The oncologist documented the meeting that took place:
 "[A]fter the period of her initial presentation at the Dana Farber Cancer Institute, it came to my attention that the pathology material that we reviewed showed clear evidence of the extension of the tumor . . . outside of the eye end into the orbital cavity. As such, her initial procedure which included enucleation [removal of the eye] only would have been considered incomplete therapy and as such, likely explained the reason for her recurrence. . . ."
The document was placed in Kaisey's file at Dana Farber. Copies of the written recordation of the meeting were then sent to one defendant, Dr. Tien, as well as Kaisey's Hasbro pediatrician, Dr. Flynn.
B. Discovery of medical records
The Plaintiffs first requested any and all medical records from Hasbro Children's Hospital in December 1997. The timing of that initial request was at or about the time the Plaintiffs first sought legal counsel. In December 1998, the records of Dr. Flynn/Clinic Rhode Island Hospital were requested. The records of the original defendant, Dr. Tien, were requested in January 1999. It was also in January 1999 that the Plaintiffs requested the records from Kaisey's doctors at Dana Farber. In August 1999, the records from the Pathology Department at Rhode Island Hospital were requested and, in January 2000, the records from Hasbro Children's Hospital/Kids Team Clinic/Dr. Flynn were requested.
The actual receipt of the records, and the information contained therein, are important to the analysis. Despite the multiple discovery requests made to the various parties having relevant information, the original Defendants and newly added Defendants did not produce all the information they had readily available. The report of Dr. Anthony, which discussed the more extensive invasion of cancer into the eye than diagnosed in Rhode Island, was not received until Kaisey's treating hospital, Dana Farber, produced it in April 1999. Dr. Petersen's letter, which also indicated that there was more extensive cancer than indicated by the Rhode Island physicians, was not expeditiously received. It was not until the original defendant, Dr. Tien, produced it in February 2000 that the Plaintiffs actually received a copy of the letter. A copy of the letter had been sent to Dr. Cortez. Apparently, this letter was placed in Dr. Cortez's desk, instead of Kaisey's medical records, until the Defendant pathologist was brought into this suit, at which point it was produced by her counsel, some time after January 2001. The meeting documentation by Dr. Kieran was not received by the Plaintiffs until Dana Farber produced it in April 1999, although there is evidence that the documentation was also in the possession of Dr. Tien and the doctors at Hasbro. Another important fact of this case is that, despite the request for the pathology slides concerning Kaisey's eye, the production of those slides was incomplete. Apparently, many of the slides were "inadvertently omitt[ed]" when first produced. Only nine of the thirty slides were given to the Plaintiffs. It was not until July 2000 that Rhode Island Hospital sent the full complement of thirty slides to the Plaintiffs.
 II. Standard of Review
The Defendants have moved this Court to grant summary judgment in their favor. The Rhode Island Supreme Court has oft repeated the standard a motion justice must use in ruling on such a motion. "Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Assoc.,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338
(R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R.Civ.P. Rule 56(c). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citing Lennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts." Id. (quoting Steinberg, 603 A.2d at 340). A court's purpose during the summary judgment procedure is issue finding, not issue determination. Industrial National Bank v.Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna,359 A.2d 350 (R.I. 1976); Slefkin v. Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing Rhode Island Hospital TrustNational Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)). "When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (Citations omitted.)
 III. Analysis
At the outset, it should be noted that both § 9-1-14.1(1) and § 9-1-14.1(2) have been addressed by the parties. The statute reads:
 "Notwithstanding the provisions of §§ 9-1-13 and 9-1-14, an action for medical, veterinarian, accounting, or insurance or real estate agent or broker malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; provided, however, that:
 (1) One who is under disability by reason of age, mental incompetence, or otherwise, and on whose behalf no action is brought within the period of three (3) years from the time of the occurrence of the incident, shall bring the action within three (3) years from the removal of the disability. (2) In respect to those injuries or damages due to acts of medical, veterinarian, accounting, or insurance or real estate agent or broker malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of the malpractice should, in the exercise of reasonable diligence, have been discovered."
 A. The minority tolling provision of G.L. 1956 § 9-1-14.1(1)
The Rhode Island Supreme Court has clearly addressed the tolling of the statute as it pertains to minor status in a medical malpractice action. Discussing 9-1-14.1(1), the Rhode Island Supreme Court in Bakalakis v.Women and Infants Hospital, 619 A.2d 1105 (R.I. 1993), opined:
 "The plain language suggests that if no action on behalf of one who is under a disability is brought within three years of the occurrence of the incident, then the statute of limitations is tolled until the maximum of three years after the disability is removed. It would also follow, then, that if an action is brought within three years of the occurrence of the incident, the minor does not benefit from the tolling of the provision once the disability is removed. It appears to us that if the Legislature did not intend to limit a minor's ability to initiate medical malpractice actions, subsection (a) [now subsection (1)] of § 9-1-14.1
would be unnecessary." Id. at 1107.
The holding was reaffirmed by the Court in Dowd v. Raynor, 655 A.2d 679
(R.I. 1995). Again, clearly and explicitly, the Court noted that "minors are treated in exactly the same way as adults with medical malpractice claims. In other words, minors and adults must join all defendants within three years of the alleged malpractice or be time-barred under §9-1-14.1." Id. at 683.
This case is analogous to Bakalakis and Dowd as it relates to minor status and the tolling of the statute. The Plaintiffs had the option of refraining from initiating an action against any of the Defendants until such time as the minor achieved the age of majority plus three years. A decision was made to initiate suit. A decision was later made to amend the complaint, which was more than three years after filing of suit. Thus, the minor Plaintiff must be treated in the same manner as an adult who brings suit based on this statute. Any hope of amending the complaint pursuant to 9-1-14.1(1) is of no avail, as was the case in both Rhode Island Supreme Court cases previously cited.
B. The discovery tolling provision of G.L. 1956 § 9-1-14.1(2) as it pertains to minors
The Defendants have argued that the discovery rule, as set forth in § 9-1-14.1(2), does not apply to minors and that, therefore, the analysis should be at an end. However, there is no indication that the two portions of the statute cannot, or should not, be read in the conjunctive. That is, just as minors must be treated as adults for purposes of the statute of limitations, so too, they must be afforded the protections from the statute of limitations. One such protection from the potential harshness of the statute of limitations is the discovery rule, which allows for the tolling of a statute of limitations in limited circumstances. As the minor Plaintiff must be treated as an adult for purposes of the statute, the chance, if any, for the permissibility of amendment necessarily lies within subsection (2) of § 9-1-14.1, which describes the aforementioned discovery rule. A minor plaintiff is not foreclosed from attempting to invoke the discovery rule based on minor status.
C. The discovery rule as found in § 9-1-14.1(2)
 1. The Parties' Arguments
The Defendants argue that the Plaintiff's alleged injury and any potential wrongdoing was neither latent nor undiscoverable. For that reason, the tolling provision of § 9-1-14.1(2) should not apply. The ordinary triggering date for a statute of limitations, the date of injury, should be applied. The injury was discoverable and was, in fact, discovered. The applicable statute of limitations is three years, and the attempt to add the new Defendants was more than three years from the date of injury. Therefore, say the Defendants, there is no reason to toll the statute, and the new Defendants should be dismissed from the case at bar.
The Plaintiffs suggest that, despite their reasonable diligence, they could not have discovered that the newly-added Defendants were allegedly negligent. In the exercise of their reasonable diligence, they posit, the earliest that they could have discovered such negligence or potential liability was December 1998. That was when Kaisey's parents discussed, with their own treating doctors, the extent of the cancer and the treatment that was given at Rhode Island Hospital. Alternatively, the Plaintiffs argue that the triggering date should be April 1999, the time that they received the medical records from Kaisey's own doctors in Boston. That would have been the first knowledge of wrongful conduct or potential negligence by anyone other than Dr. Tien. The amended complaint in January 2001 fell within three years of December 1998, the date when they first discovered, through the opinions expressed by Kaisey's doctors in Boston, that Rhode Island Hospital and the defendant pathologists might be liable.
2. Discussion of the law of the discovery rule
Whether a plaintiff has acted with reasonable diligence, for the purposes of tolling a statute of limitations, is a question of law. Dionnev. Baute, 598 A.2d 833, 835 (R.I. 1991); see also Meyette v. Leach,651 A.2d 1229, 1229 (R.I. 1994); Benner v. J.H. Lynch Sons, Inc.,
621 A.2d 332, 335 (R.I. 1994); Trudeau v. Dupre, 640 A.2d 634, 635 (R.I. 1994); Anthony v. Abbott Labs., 490 A.2d 43 (R.I. 1985). The Rhode Island Supreme Court has visited the issue of the "discovery rule" and the potential tolling of an applicable statute of limitations on many occasions. See, e.g., Dionne v. Baute, 598 A.2d 833 (R.I. 1991).
The Rhode Island Supreme Court first addressed the tolling of the malpractice statute in Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745
(R.I. 1968). The Court was confronted with the situation when an injury does not manifest itself until some time after the alleged negligent conduct occurs. There, the plaintiff received radiation treatment for a tumor on her chest. Several years later, after the plaintiff began experiencing problems with her chest, she required extensive surgery. Ultimately, she attempted to sue the radiologists on the theory that they had previously exposed her to an excessive amount of x-rays, thereby causing her injury.
In Wilkinson, the Court interpreted § 9-1-14.1 to allow for the discovery rule. The discovery rule has since been codified in that statute. The Court held:
 "To require a [person] to seek a remedy before he knows of [available] rights, is palpably unjust. Under such circumstances, in order for a patient to secure and protect [any] legal rights against doctors for malpractice, the patient would be required to submit to complete examinations by a series of independent physicians after every operation or treatment he [or she] received from the physician of his [or her] first choice. The unreasonableness of such a result is self-evident." Id. at 238-39.
Thus, the statute of limitations does not commence until the plaintiff discovers or, in the exercise of reasonable diligence, should discover, that the plaintiff has suffered an injury due to a physician's negligent treatment. Id.
In following cases, like Dionne v. Baute, 589 A.2d 833 (R.I. 1991), our Supreme Court was confronted with the similar issue of applying the tolling provision found in § 9-1-14.1(2) in a medical malpractice action. There, the plaintiff appeared at the emergency room on August 2, 1983, complaining of chest pains and arm numbness. The covering physician was informed that the plaintiff was being discharged because of an abatement of the symptoms. Allegedly, the covering physician did not make a note in the plaintiff's file regarding treatment, nor did he inform the plaintiff's regular treating physician of the emergency room treatment. Two weeks later, the plaintiff suffered a fatal heart attack.
Suit was commenced in 1985, naming the emergency room, the emergency room physician and the plaintiff's treating physician as defendants. However, the covering physician was not named. In 1988, some three years after suit was filed and five years from the date of the injury, the plaintiff's administratrix filed an amended complaint, adding the covering physician as a defendant. The covering physician defendant then moved for summary judgment on the grounds that the suit was untimely because it was more than three years after the plaintiff's death and more than three years after the plaintiff's administratrix had knowledge of the covering physician's participation in the plaintiff's treatment. Summary judgment was granted in favor of the moving physician.
On appeal, the Rhode Island Supreme Court, citing Wilkinson, noted that the statute of limitations begins to run when the plaintiff discovers, or should have discovered with the exercise of reasonable diligence, that the plaintiff "has sustained an injury as a result of the physician's negligent treatment." Id. at 834. In Dionne, the Court determined that the reasonable diligence standard of § 9-1-14.1 was applicable, in general, to "the efforts of a plaintiff who seeks to determine potential defendants in a malpractice dispute." Id. at 835. When performing an analysis of the reasonable diligence standard of § 9-1-14.1 in a medical malpractice action, "it is necessary for a plaintiff to investigate diligently who may or may not have had any exposure to liability during treatment." Id. In that case, the plaintiff's administratrix had access to the plaintiff's medical records as early as 1984 and did not file suit until 1988. The plaintiff was in possession of all the relevant information that could show wrongful conduct and was aware of the injury, which was death. The Court held that she did not satisfy the reasonable diligence standard in § 9-1-14.1. Id.; seealso Kougasian v. Davol, Inc., 687 A.2d 459 (R.I. 1997) (citing Dionne,
the Court noted that cause of action accrued upon diagnosis of cancer because the plaintiff knew at time of diagnosis about gas emissions from nearby plant and its possible carcinogenic effect).
Tolling a statute of limitations based on the discovery rule has also been discussed by the Rhode Island Supreme Court on a number of other occasions, each time reinforcing the holding of Wilkinson. The Meyette
Court refused to toll the statute of limitations because the alleged negligence in that case was neither latent nor undiscoverable if reasonable diligence had been used, which made the discovery rule inapplicable. In that case, though, the decedent passed away in 1983, pertinent x-ray records were not requested until 1988, and suit was filed in 1989. A Superior Court justice granted summary judgment, ruling that the suit was not timely filed and the discovery rule did not apply. The Rhode Island Supreme Court concurred with the ruling. 651 A.2d at 1229. The Court cited Wilkinson on the grounds that the statute of limitations may be tolled "until such time as the wrong manifests itself." Id. at 1230. The plaintiff was aware of the injury, which was death. The Rhode Island Supreme Court noted that if the plaintiff had exercised reasonable diligence at the time of the death by requesting the x-rays, which were available to her, then she would have discovered the alleged negligence within the three year statute of limitations. Therefore, because she was not reasonably diligent, the Court found that there was no basis for tolling the statute pursuant to the discovery rule. Id.
Again, in Trudeau v. Dupre, 640 A.2d 534 (R.I. 1994), wherein the alleged negligence was neither latent nor undiscoverable, the discovery rule did not apply. In Trudeau, the plaintiffs filed suit in 1991, alleging wrongful death and medical malpractice following the death of their son in utero in 1983. The plaintiffs averred that it was not until they read a 1988 newspaper article, discussing the revocation of the defendant's license after his malpractice resulted in the death of another infant, that wrongful conduct on the part of the defendant was first suspected; suit was filed within three years of that time. The defendants argued that the suit was not filed within the applicable statutes of limitations, § 10-7-2 and § 9-1-14.1. The hearing justice granted the defendant's motion for summary judgment, ruling that reasonable diligence would have led them to discover the alleged negligence within the statute of limitations. The Rhode Island Supreme Court held that the "defendant's alleged malpractice was neither latent nor potentially undiscoverable." 640 A.2d at 535. "Had plaintiffs exercised reasonable diligence at the time of their son's death, any act of alleged negligence on defendant's part could have been discovered."Id. Therefore, in Trudeau, the discovery rule was inapplicable, the plaintiff was not reasonably diligent, and there was no basis for tolling the statute.
Similarly, in Ashey v. Kupchan, 618 A.2d 1268 (R.I. 1993), the Rhode Island Supreme Court discussed the tolling provisions and its potential application. There, the decedent died following surgery and suit was commenced in a timely manner. After the initial suit was dismissed for naming an improper defendant, a second suit was filed; the action was brought pursuant to the wrongful death statute, which contains a similar tolling provision as § 9-1-14.1(2), and was filed three years and six months after the death, naming the treating medical practitioners. In ruling against tolling the statute in the wrongful death action, the Court clarified its position with respect to tolling the statute in medical malpractice and drug-product liability actions. Id. at 1269-70. The Court stated:
 "In Wilkinson v. Harrington, 104 R.I. 224, 237, 243 A.2d 745, 752 (1968), we held that the discovery rule applied to a medical malpractice case wherein an injury remained latent for years, undiscoverable by the victim. Similarly in Anthony v. Abbott Laboratories, 490 A.2d 43, 45 (R.I. 1985), we held that the statute of limitations in a product liability action against a drug company does not begin to run until the plaintiff discovers the manufacturer's wrongful conduct. In both cases we expanded the statute of limitations period to protect individuals suffering from latent and potentially undiscoverable injuries. There is nothing undiscoverable about the injury or the negligence in this case. The plaintiffs were aware of the wrongful conduct shortly after the death of [the decedent]." Id. (Emphasis added.)
There has been occasion since Wilkinson, however, to apply the discovery rule in medical malpractice actions. The tolling provision of § 9-1-14.1(2) was applied in Zuccolo v. Blazar, 694 A.2d 717 (R.I. 1997). In that case, the plaintiff was prescribed a steroid by the defendants to alleviate the difficulty the plaintiff and his wife were having in conceiving children. In 1985, after several months of taking the steroid, the plaintiff began experiencing joint swelling. The plaintiff's general practitioner recommended that the plaintiff refrain from using the steroid, but neither he nor the three rheumatologists the plaintiff visited between late 1985 and 1988 diagnose avascular necrosis (a disease of the joints), despite the plaintiff's thoughts that the swelling was due to the steroid. The plaintiff was diagnosed with rheumatoid arthritis, which is not connected to steroid use. It was not until December 1988, after an MRI scan, that the plaintiff was diagnosed with avascular necrosis and that there was a possible connection to previous medication.
Suit was initiated in July 1991. The defendants moved for summary judgment on the grounds that the plaintiff began taking the steroid in 1985 and began suffering injury within several months of that date, therefore, filing the complaint six years later was well beyond the three year statute of limitations in § 9-1-14.1. Id. In response, the plaintiff asserted that suit was timely because, in exercising reasonable diligence, the earliest that the plaintiff could have discovered that the use of the steroid caused his injury was December 1988; the discovery of the injury was within three years of filing the complaint. Id.
The Rhode Island Supreme Court analogized the case to the earlier drug product liability action, Anthony, because of the ingestion of a drug and the manifestation of adverse effects occurring later in time. Id. at 719. The Court noted that no specific connection between the steroid ingestion and injury was made by the plaintiff's general practitioner, and three different specialists had misdiagnosed the plaintiff's injury.Id. The MRI scan was the first indication that the steroid had caused his injury. It was only through the plaintiff's persistence in determining the cause of his injury that he discovered that the steroid was connected to his illness. See id. The Rhode Island Supreme Court could not "conceive of a set of facts that would more clearly demonstrate the concept of reasonable diligence," and the action was not barred by the statute of limitations because of the tolling provision. Id.
Further, in limited circumstances, the statute may be tolled when the manifestation of an injury, knowledge of the cause of the injury and knowledge of the wrongdoing occur at different times, until such time as the use of reasonable diligence would have made the wrongful conduct known. See Anthony v. Abbott Labs., 490 A.2d 43, 46 (R.I. 1985); Renaudv. Sigma-Aldrich Corp., 662 A.2d 711 (R.I. 1995); see also Lee v. Morin,469 A.2d 358, 360 (R.I. 1983) (holding that the statute of limitations begins to run when evidence of injury to real property, resulting from negligence, is significant enough to allow the injured party to be alerted to the possibility of a defect).
In Anthony, the Rhode Island Supreme Court answered a certified question from the United States District Court for the District of Rhode Island. The question as posed required the Court to answer whether, for purposes of the discovery rule, "the statute of limitations begins to run in a drug product-liability action when the plaintiff discovers the personal injuries and its cause or when plaintiff discovers or should have discovered knowledge of defendant manufacturer's wrongful conduct." 490 A.2d at 44. Factually, the plaintiffs alleged injury as a result of exposure to a synthetic hormone while in utero (one of the plaintiffs was a mother who alleged injury as a result of the ingestion of the hormone while pregnant). The plaintiffs all knew of their collective injuries more than three years before filing suit and that the injuries were possibly caused by exposure to the hormone; they did not, however, have knowledge of any potential wrongful conduct on the part of the defendants at any point in time more than three years prior to filing suit.
In likening a drug product-liability action to a medical malpractice action, the Court cited Wilkinson for the proposition that one should have an opportunity to be aware of an injury, as well as its cause, before the statute of limitations begins to run. Id. at 45. "The same considerations that support the adoption of the discovery rule in medical-malpractice cases apply a fortiori to the drug product-liability field." Id. at 45 (Citations omitted). The emerging trend at that time was that a plaintiff should have some knowledge of wrongdoing before the statute of limitations starts to run. Id. at 46. The Court distinguishedWilkinson on the basis that, in Wilkinson, the cause of the injury and the wrongful conduct occurred at the same time. See id. The Rhode Island Supreme Court adopted the following rule: "[I]n a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points on time, the running of the statute of limitations wouldbegin when the person discovers, or with reasonable diligence should havediscovered, the wrongful conduct of the manufacturer." Id. (Emphasis added). A plaintiff does not need to be aware of all the legal elements of a cause of action before the statute of limitations begins to run.Id. However, the plaintiff "has to have `some awareness . . . that her injuries were the result of some wrongdoing on the part of defendants.'"Id. (quoting Dawson v. Eli Lilly Co., 543 F. Supp. 1330, 1339 (D.D.C. 1982)).[3]
 D. Analysis
After a review of the caselaw, this Court concludes that the Rhode Island Supreme Court has given the justices of the Superior Court significant guidance in determining whether to apply the discovery rule and toll a statute of limitations. The Rhode Island Supreme Court has noted that an extension of the discovery rule ought to be cautiously applied. However, a victim should not be foreclosed from seeking relief before the victim is aware of an injury as a result of negligent conduct. As a general matter, then, the discovery rule should only be applied when knowledge of an injury, knowledge of causation, and knowledge of wrongful conduct occur are latent and potentially undiscoverable, particularly when the information is gleaned at different points in time.
It is this Court's interpretation of the relevant legal principles, as well as the difficult and troubling facts of this case, that the statute of limitations should be tolled pursuant to the discovery rule in §9-1-14.1(2). In this case, the Plaintiffs attempted to uncover the wrongdoers, and the Defendants could not, or would not, provide them with the information necessary to making that determination. If it was not for the information that the Plaintiffs received from the treating hospitals and physicians after they decided to transfer care, the Plaintiffs might well have believed that the original defendant in this matter, the surgical opthamoligist, Dr. Tien, was solely responsible for failing to adequately care for Kaisey, resulting in the metastasizing of Kaisey's cancer. Until December 1998, it would appear to this Court that the Plaintiffs could reasonably argue that they had no basis for even suspecting that the pathologist Defendants were in any way responsible for Kaisey's severe, life-threatening condition.
An important consideration to this Court is the production of the relevant materials to the Plaintiffs. If the Plaintiffs had received Dr. Kieran's information, Dr. Petersen's information, Dr. Anthony's information, or all of the pathology slides, when requested, the analysis might well be different in this case. The information should have been discoverable, but was not, due to the failure of the Defendants to provide the Plaintiffs with Kaisey's records. Inexplicably,[4] despite producing documents in droves, these records were not produced as they should have been. It appears that the Plaintiffs were reasonably diligent in requesting the records, and it appears to this Court that the Plaintiffs were reasonably diligent in investigating the matter. Certainly, this Court cannot say, as a matter of law, that the Plaintiffs were not reasonably diligent in their efforts to determine the allegedly wrongful conduct of the Defendants. When the documents were not produced, despite the Plaintiffs' efforts, the alleged wrongful conduct of the Defendants was, therefore, latent and undiscoverable.
 Conclusion
Accordingly, this Court denies the Defendants motion for summary judgment. Therefore, the discovery rule as codified by § 9-1-14.1(2) is properly invoked in this case. The Plaintiffs' amended complaint in January 2001 is not time-barred, as the statute was not triggered until December 1998, the first time the Plaintiffs had any knowledge of the Defendants' alleged wrongful conduct and causation of Kaisey's injury. Counsel are directed to confer and to submit to this Court forthwith for entry an order that is in conformity with this decision.
[1] The Defendants are the moving party in this motion for summary judgment. Therefore, the facts will be viewed in the light most favorable to the Plaintiffs. See Palmisciano v. Burrillville Racing Assoc.,603 A.2d 317, 320 (R.I. 1992).
[2] Most importantly to all parties, and to this Court, at this time Kaisey appears to be cancer-free.
[3] It should be noted that, although a "John Doe" defendant was named in the caption of this case, Grossi v. The Miriam Hospital, 689 A.2d 403
(R.I. 1997), is distinguishable and, therefore, not applicable to the case at bar. The case was decided by analyzing § 9-5-20 because the plaintiff wanted to toll the statute of limitations from the time of filing suit against a known, but unidentifiable, defendant. The case explicitly noted that § 9-1-14.1(2) did not apply. In this case, analyzing the tolling provision found in § 9-1-14.1(2) is proper to the resolution of this matter. Although there has been a "John Doe" designation here, this case concerns allegedly latent and potentially undiscoverable negligence and it does not concern a known, but unidentified, defendant.
[4] No allegation of fraud or misrepresentation has been made by the Plaintiffs, and this Court will not make such a finding sua sponte. However, the Defendants may not rely upon their own failures in seeking to deny a remedy to this child.