[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before this Court is Plaintiffs' motion to strike Defendants' affirmative defense relating to the applicability of G.L. 1956 § 9-19-34.1, the so-called medical malpractice collateral source statute. Plaintiffs argue that § 9-19-34.1 is unconstitutional,[1] and thus the defense asserting its application is insufficient and should be stricken pursuant to Rule 12(f). Defendants object to Plaintiffs' motion.[2]
 Facts and Travel
Plaintiffs brought this medical malpractice action against Defendants on July 13, 2001. According to Plaintiffs' answer to interrogatories, Plaintiff Douglas Drysdale's medical bills, net of co-payments made by the Plaintiff, were substantially paid by Blue Cross, a third party insurer. Plaintiff also states that he received temporary disability benefits and social security disability payments as a result of the injuries sustained allegedly due to the negligence of one or more of the Defendants.[3]
In light of these payments, Defendants Coppe and Pawtucket Valley Prescription and Surgical Center, Inc., in their respective answers, asserted an affirmative defense relating to the applicability of the provisions of § 9-19-34.1.[4] That provision, applied as a rule of evidence at trial, has the effect of abolishing the common-law collateral source rule in medical malpractice actions with regard to specific types of collateral payment.[5]
Plaintiffs have notified the Attorney General pursuant to the provisions of the Rules of Civil Procedure, Rule 24(d), of the constitutional challenge. The Attorney General, by letter dated November 1, 2004, has advised the Plaintiffs and the Court that he will not intervene at this time relative to the constitutional issues.
The Rhode Island Rules of Civil Procedure allow a party to make a motion to strike a defense raised in any pleading. The rule provides:
 "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." Super. Ct. R. Civ. P. Rule 12(f).
Motions to strike a defense under Rule 12(f) are generally not favored.See Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards,677 F.2d 1045, 1057 (5th Cir. 1982). However, in the instance when only a legal determination must be made based upon uncontroverted facts, a motion to strike may be useful. See generally, Wright Miller, FederalPractice and Procedure: Civil 3d § 1381.
It appears from these pretrial pleadings that it is the intention of the Defendants, at trial, to make the statutory election permitted by §9-19-34.1. Accordingly, this motion to strike is essentially in the nature of a motion seeking a determination in limine as to the availability of this statutory defense. In that procedural context, the Court will rule on the constitutional issues raised by the Defendants.
 Background
In 1976, the General Assembly enacted the Rhode Island Medical Malpractice Reform Act. See P.L. 1976, ch. 244, sec. 7. At that time, the General Assembly enacted G.L. 1956 § 9-19-34, the precursor to the statute challenged herein. In addition, the General Assembly at that time enacted a variety of other measures designed to address a perceived crisis in connection with medical malpractice claims. In pertinent part, the statute effectively abrogated the common law collateral source rule in the context of medical malpractice actions. The common law collateral source rule "mandates that evidence of payments made to an insured party from sources independent of a tort feasor are inadmissible and shall not diminish the tort feasor's liability to plaintiff." Votolato v. Merandi,747 A.2d 455, 463 (R.I. 2000) (quoting Gelsomino v. Mendoca, 723 A.2d 300,301 (R.I. 1999)).
In 1986, the collateral source statute was amended to add the language which provides that whenever the plaintiff's award is reduced by the collateral source payment "the lien of any first party payor who had paid such benefit against the judgment shall be foreclosed and the plaintiff shall have no legal obligation to reimburse the payor." The effect of such amendment is that, to the extent a medical malpractice plaintiff is precluded by the statute from recovering sums paid by a collateral source, the collateral source is also prohibited from enforcing a lien against the plaintiff's recovery, or otherwise seeking to enforce as against the plaintiff a legal obligation to reimburse the collateral source.[6]
 Standard of Review
Legislative enactments of the General Assembly are presumed to be valid and constitutional. Kass v. Retirement Board of the Employees' RetirementSystem of the State of Rhode Island, 567 A.2d 358, 360 (R.I. 1989),citing Gorham v. Robinson, 57 R.I. 1, 7, 186 A.832, 837 (1936). The party challenging the constitutional validity of the statute carries the burden of persuading the court beyond a reasonable doubt that the legislation violates an identifiable aspect of the constitution. Id; Dowd v. Rayner,655 A.2d 679, 681 (R.I. 1995). See also Boucher v. Sayeed, 459 A.2d 87, 92
(R.I. 1983). In an equal protection challenge, the burden is more than nominal: "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v.Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d. 393, 399 (1961). A court may not "overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Vance v.Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).
"When a statute involves neither a suspect classification, nor a fundamental right, nor a gender-based classification, the proper standard of review is minimal scrutiny." Dowd, 655 A.2d at 681. Minimal scrutiny is applied to "social or economic legislation, presuming it to be valid if the classification drawn is rationally related to a legitimate state interest." In re: Advisory from the Governor, 633 A.2d at 664, 669 (R.I. 1993).
Such a rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choice." Heller v. Doe,509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d. 257 (1993), quotingFCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096,2100-2101, 124 L.Ed.2d 211 (1993). A statute must be upheld if the reviewing court determines that the disparate treatment serves some legitimate governmental purpose. Id. at 320.
There is no claim here that the classification of medical malpractice plaintiffs is subject to a heightened level of scrutiny. This statutory classification is not based on race, alienage, national origin, or gender. Nor is the classification subject to heightened scrutiny because of its effect upon a fundamental constitutional right. Rather, because it is a statutory classification applied solely to social or economic legislation, the statute passes constitutional scrutiny "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, 508 U.S. at 313, 113 S.Ct. at 1201. See Rhode Island Insurer's Insolvency Fund v. LewistonMfg. Co., 716 A.2d 730, 734 (1998). ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.")
 Discussion
In 1976 and again in 1986, the General Assembly attempted to address what might generally be characterized as medical malpractice reform legislation. In each instance, the legislature attempted to modify certain legal doctrines, and treat claims for medical malpractice differently than other tort claims. The rationale for making such legislative distinctions was articulated to some extent in the preamble to 1986 R.I. Pub. Laws ch. 350.[7]
Although the legislature in 1986 articulated some of the reasons for its enactment, the legislature need not actually articulate the reasons which it believes support a particular statutory classification. It is not for the courts to determine the wisdom of the legislative classification, as long as there is some conceivable rationale, in this instance, to distinguish between medical malpractice claims and other tort claims. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." FCC v. Beach Communications, 508 U.S. at 315, 113 S.Ct. at 2098.
Although not specifically articulated in the statute, it appears to the Court that the legislature was attempting to put in place a measure that, in some fashion, would have the effect of reducing the cost of medical malpractice insurance and/or make medical malpractice more available to physicians and medical providers. In addition, although the statute renders the plaintiff unable to recover certain benefits he or she received from collateral sources, the collateral sources are likewise unable to collect the sums paid from any recovery the plaintiff may obtain. Accordingly, some part of the damages sustained by a victim of medical malpractice is shifted to the collateral source, who is statutorily precluded from recovering certain benefits paid to or on behalf of the plaintiff from the plaintiff's tort recovery. Thus, by shifting or spreading some of the financial risk for medical malpractice claims to the collateral sources, it is certainly conceivable that the cost of insurance to medical providers might thereby be reduced.
This Court need not hold hearings or take evidence to take judicial notice that the issue of tort reform in general, and medical malpractice tort reform in particular, is a matter of current public and legislative debate. Whether this Court would, as a matter of public policy, take one side or the other in this debate is irrelevant. Once the Court finds a "conceivable" rational basis to justify the legislature's distinction between medical malpractice claims and other claims, the Court's limited role is over. The General Assembly is the proper forum wherein the debate must continue and reach resolution. This Court need not, and will not, engage in a process to determine if reform of the collateral source rule in medical malpractice actions is the wisest or fairest manner within which to achieve the desired result of reducing the cost of malpractice coverage. It is the role of the legislature to engage in the type of legislative fact-finding necessary to decide among competing methodologies to achieve a desired legislative result. Our Supreme Court has noted that the "rational basis" standard for testing the viability of legislative classifications is a "relatively relaxed standard reflecting [an] awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." Powerv. City of Providence, 582 A.2d 895, 904 (R.I. 1990), quotingMassachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314,96 S.Ct. 2562, 2567, 49 L.Ed.2d. 520, 525 (1976).
The Court is mindful that another justice of this Court has taken a different view of the collateral source legislation and its constitutionality under a "rational basis" analysis. See Reilly v.Kerzer, 2000 WL 1273998 (R.I. Super. 2000); Maguire v. Licht, 2001 WL 1006060 (R.I. Super. 2001). With due respect to my colleague, this Court believes that judicial restraint is necessary when the legislative branch has attempted to address a matter of public policy in the arena of economic and social reform. See FCC v. Beach Communications, 508 U.S. 307,315, 113 S.Ct. at 2101 (". . . judicial intervention is generally unwarranted no matter how unwisely [a court] may think a political branch acted." (quoting Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942-43,59 L.Ed.2d 171 (1979)).
The Court in Reilly and Maguire limited its review to an analysis of whether the stated legislative purpose of promoting the stability of the Medical Malpractice Joint Underwriting Association was achieved by the collateral source statute. This Court believes that the rational basis inquiry is broader, and includes whether or not the statute in question might conceivably contribute to mitigating the financial burden of medical malpractice claims on physicians in Rhode Island, and the insurers who underwrite such risks. Having answered that question in the affirmative, the Court finds that the statute in question, § 9-19-34.1, is not violative of state or federal equal protection guaranties.[8]
In Boucher v. Sayeed, 459 A.2d 87 (R.I. 1983), the Supreme Court found unconstitutional the provision of the Medical Malpractice Reform Act of 1976 dealing with required preliminary hearings before non-judicial panels to determine the sufficiency of evidence in claims of medical malpractice. The Court took judicial notice of the status of the alleged "malpractice crisis" in 1981 and concluded that a rational basis for the legislative classifications was non-existent. The Court in Boucher
declined to speculate about "unexpressed or unobvious" permissible state interests.
More recently, in Flanagan v. Wesselhoeft, 765 A.2d 1203 (2001), the Court upheld as constitutionally acceptable a legislative distinction between the computation of prejudgment interest in medical malpractice actions as compared to other tort claims. The Court therein noted the same 1986 legislative findings which form the basis of the current dispute, and opined that the statute "rationally furthers a purpose as required by Boucher." Id. At 1211. The Court further noted "the findings of the General Assembly relating to the stability of the Medical Malpractice Joint Underwriting Association of Rhode Island are entitled to deference from this Court." Id.
It appears to this Court that the challenge herein is controlled by theFlanagan decision, rather than the Boucher decision. For the reasons stated herein, the Plaintiffs' motion to strike is denied, and the Court determines in limine that the Defendants may at trial introduce evidence of payments received by the Plaintiff which are defined as collateral sources in accordance with § 9-19-34.1.
The parties shall present an appropriate order consistent with this decision.
[1] Although Plaintiffs' motion does not specifically designate the constitutional provisions which allegedly invalidate the statute, the content of the memorandum suggests an equal protection analysis.
[2] Defendant Erica Jost, M.D., although not raising the statutory provisions of § 9-19-34.1 as an affirmative defense, has nonetheless filed a memorandum with the Court in support of the constitutionality of the statute. Defendants David Coppe and Pawtuxet Valley Prescription and Surgical Center, Inc. have asserted the affirmative defense, and have likewise defended the constitutionality of its application.
[3] The parties have not focused the Court's attention on whether all of the payments received by plaintiff from collateral sources are sources defined in § 9-19-34.1. For purposes of this motion, the Court will assume, without deciding, that all of the payments received by plaintiff from collateral sources are defined in the statute. But see Kem v.Monchick, 23 (2004) (finding that medical assistance payments to plaintiff under the Medicaid program were not collateral sources as defined under § 9-19-34.1).
[4] Section 9-19-34.1 provides as follows:
 "In the event the defendant so elects, in a legal action based upon a cause of action arising after January 1, 1987, for [medical malpractice], the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to any state income disability or workers' compensation act, any health, sickness or income disability insurance, accident insurance that provides health benefits or income disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. . . . When such evidence is introduced, the jury shall be instructed to reduce the award for damages by a sum equal to the difference between the total benefits received and the total amount paid to secure the benefits by the plaintiff or the court may ascertain the sum by special interrogatory and reduce the award for damages after verdict. Whenever an award is so reduced, the lien of any first party payor who has paid such a benefit against the judgment shall be foreclosed and the plaintiff shall have no legal obligation to reimburse the payor."
[5] This Court previously ruled in Kem v. Monchick, 23 (2004) that medical assistance payments made to a plaintiff under the Medicaid Program are not included in the defined collateral sources covered by §9-19-34.1. Accordingly, the Court found that plaintiff was not prohibited by the statute from including such payments in its damage claim, and the defendants' efforts to introduce evidence of such payments under the statute was not permitted. In light of the determination that the only collateral source payments that plaintiff received were not covered by the statute, the Court did not address the constitutional issue raised by the plaintiff herein.
[6] Defendant Jost suggests that the provision added by way of amendment constituted "a broad declaration that the collateral source may not enforce any lien or subrogation right, whether legal, conventional or statutory." Jost Memorandum at pp. 10-11. While this Court agrees that the amendment prohibits recovery by the collateral source against the plaintiff, this Court does not have before it the effect of the statute on the subrogation right of the third-party payors, and the Court declines to reach that issue at this time. Compare Barme v. Wood, 37 Cal. 3d 174,689 P.2d 446 (1984) with Fein v. Permanente Medical Group, 38 Cal. 3d 137,165-6, 695 p. 2d 665, 685 (1985). Parenthetically, the statute in question is Barme, unlike the Rhode Island counterpart, provides in pertinent part: "(b) No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff norshall it be subrogated to the rights of the plaintiff against adefendant." (emphasis added)
[7] "WHEREAS, The number of medical and dental malpractice claims being made and the cost of settling such claims by the Medical Malpractice Joint Underwriting Association of Rhode Island, an agency of state government designed to provide a continuing stable institution for medical and dental malpractice liability insurance and the dominant such insurance carrier in this state, has continued to increase significantly; and
WHEREAS, As a result, the Medical Malpractice Joint Underwriting Association has recently experienced an accelerated negative financial position resulting in a fund deficit as of December 31, 1985; and
WHEREAS, Insolvency of said Association would have an adverse financial effect upon the citizens of Rhode Island who purchase liability insurance of any type as their premiums would increase in order to offset the deficit or, alternatively, such insolvency would adversely affect all the taxpayers of Rhode Island; and . . .
WHEREAS, The General Assembly finds that a significant number of medical and dental malpractice claims have been filed against a relatively few health care providers; and . . .
WHEREAS, the General Assembly acting within the scope of its police power finds the statutory remedy herein provided is intended to be an adequate and reasonable remedy now and into the foreseeable future." 1986 R.I. Pub. Laws ch. 350.
[8] This Court is mindful that courts in other jurisdictions have ruled on the constitutional viability of statutes abrogating the common law collateral source rule in medical malpractice actions. See Reid v.Williams, 964 P.2d 453 (AK. 1998); compare Carson v. Maurer, 424 A.2d 825
(N.H. 1980). See generally Validity and Construction of State StatuteAbrogating Collateral Source Rule as to Medical Malpractice Actions, 74 A.L.R. 4th 32 (1989).